16 *People First of Tenn., et al. v. Clover Bottom Dev. Ctr., et al.*     Nos. 00-5342/6514

## III. CONCLUSION

CMRA has not satisfied the requirements to intervene as of right because it was not timely in bringing its motions and did not establish an adequate substantial interest in either lawsuit. Because it has not established these necessary elements, we do not analyze the claims of impairment of the applicant's ability to protect its interest in the absence of intervention, and whether CMRA's interest is inadequately represented by the parties already before the court. *See Michigan State AFL-CIO,* 103 F.3d at 1245.

The judgments of the district courts are AFFIRMED.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0261P (6th Cir.)
File Name: 01a0261p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

00-6514

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*
COMMUNITY REHABILITATION
AGENCIES OF TENNESSEE,
INC.,

    *Proposed Intervenor-Appellant,*
PEOPLE FIRST OF TENNESSEE,
    *Intervenor-Appellee,*

  *v.*
STATE OF TENNESSEE,
    *Defendant-Appellee.*

Nos. 00-5342/6514

00-5342

PEOPLE FIRST OF TENNESSEE,
on behalf of its members;
BONNIE CHAFFEE, by her next
friend, Crystal Goodman;
DOWELL HARRIS, by his next
friend, Rocky Akin; EFFIE
ESTELLE PIPPIN, by her next
friend, Frances Hamblen;
SANDRA JO PROCTOR, by her
next friend, Evelyn
McCormack; CYNTHIA DAWN

SOMMERVILLE, by her parents and natural guardians, Jeff and Kathy Sommerville; KEVIN TROUPE, by his next friend, Charles Hall; JUANITA WRIGHT, by her next friend, William A. Goodman, Jr., MARY ANN AVERY, by her next friend, Jason Elam; AUDRINIECE HOLLISTER, by her next friend, Ethyl Ervie; KENNETH LEE; EDDIE JONES; LARRY WAYNE VAUGHN; CHARLES WILHOITE; CAROLYN BRITT; REBECCA WORKMAN; JENNY BELLE GREENWOOD; DAVID BALTHROP; TERRY BEATY; UNITED STATES OF AMERICA,
           *Plaintiffs-Appellees,*

   *v.*

CLOVER BOTTOM DEVELOPMENTAL CENTER; DON SUNDQUIST, in his official capacity as Governor of the State of Tennessee; JULIE BRATCHER, in her official capacity as Superintendent of Clover Bottom Developmental Center; TENNESSEE DEPARTMENT OF MENTAL HEALTH AND MENTAL

to that person without permission of the State pursuant to TCA 33-1-202(c).

Provider Agreement ¶ E.17. CMRA relies on this court's decision in *Linton v. Commissioner of Health and Environment,* 30 F.3d 55 (6th Cir. 1994), where we held that intervention was appropriate because individual nursing homes had a substantial interest in a suit involving a State plan to remedy violations of the Medicaid Act. In *Linton*, contracts between the State and nursing homes contained a lock-in provision that prohibited providers from opting out of the State's Medicaid system until the last patient voluntarily left the nursing home. *Id*. at 1315-16. This provision effectively precluded the nursing homes from terminating their membership in Medicaid. *Id*. at 1317. We reversed the district court in *Linton* and held that the effect of the lock-in violated the contractual and statutory rights of nursing homes and gave the nursing homes a substantial interest in the litigation to justify intervention. *Id*. at 1315-16, 1319.

In *People First* and the *United States v. State of Tennessee*, the district judges held that the lock-in provision in their cases did not have the same effect as in *Linton* and did not justify a substantial interest in this case to allow intervention. First, the agreements in these cases allow the service provider to petition the State to terminate or modify services to the mentally retarded or those with mental disabilities, and thereby do not create a permanent obligation as is the case in *Linton*. Second, the lock-in provision in the cases before us does not establish an indefinite obligation on service providers to contract with the State as in *Linton*. Third, the community-based service providers voluntarily entered into contracts with the State and remain free to renegotiate all aspects of its contracts with the State of Tennessee.

CMRA's economic interest and its interest in the lock-in provision do not reach the level of requisite substantial interest required to intervene.

First, CMRA points to its economic interest in assuring adequate funding for implementation of the settlement agreements and its contractual rights in agreements with the State to provide community-based services. The parties to these lawsuits have entered into consent decrees aimed at guaranteeing that Tennessee provide at least the minimum level of care to developmentally disabled individuals required by federal law. CMRA does not challenge the terms of these agreements or contend that they fall below what federal law requires. CMRA is only concerned with the level of funding provided by the State to community-based service providers. CMRA's claimed interest does not concern the constitutional and statutory violations alleged in the litigation, but rather how much its members get paid for providing services. CMRA has an interest in the economic component of the settlement but the consent decrees obligate the State, not CMRA, to fund community services adequately. By the terms of the settlement agreements, it is the responsibility of the State of Tennessee to provide adequate and appropriate community services to members of the plaintiff class. Implementation of the settlement agreement does not alter CMRA's economic interests with the State to provide support and services to the class members nor its ability to negotiate the terms of these contracts. Further, as found by both district court judges, CMRA can protect its economic interests in contract negotiations with the State by lobbying the legislative and executive branches for favorable funding arrangements, and in state courts by suing to enforce its contractual rights.

Second, CMRA claims to have a sufficient interest in the litigation because of the lock-in provision in the Provider Agreement. The Provider Agreement provision at issue states:

> Once a Contractor is serving a person on the supported living medical, supported living enhanced or supported living behavioral rates, the Contractor must continue to provide services and may not discharge or deny services

RETARDATION; TENNESSEE DEPARTMENT OF HEALTH; RUSTY SEIBERT, in his official capacity as Assistant Commissioner of TennCare; COMCARE, INC.; FREDIA S. WADLEY, M.D., in her official capacity as Commissioner of Health; GREENE VALLEY DEVELOPMENTAL CENTER; NAT T. WINSTON DEVELOPMENTAL CENTER; O. STEPHEN ROTH, in his official capacity as Superintendent of Clover Bottom Developmental Center; ROBERT ERB, in his official capacity as Superintendent of the Greene Valley Developmental Center; PETE DAVIDSON; BEN DISHMAN; THOMAS SULLIVAN; JOHN FERGUSON, in his official capacity as Commissioner of Finance and Administration,
          *Defendants-Appellees,*
COMMUNITY REHABILITATION AGENCIES OF TENNESSEE (CMRA),
          *Proposed Intervenor-Appellant.*

Appeal from the United States District Courts
for the Middle District of Tennessee at Nashville and the
Western District of Tennessee at Memphis.
Nos. 92-02062; 95-01227; 96-01056—Robert L. Echols,
Chief District Judge; Jon Phipps McCalla, District Judge.

Argued: April 27, 2001

Decided and Filed: August 8, 2001

Before: NELSON and BATCHELDER, Circuit Judges;
FEIKENS, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** William M. Barrick, WEED, HUBBARD,
BERRY & DOUGHTY, Nashville, Tennessee, for
Appellants. Judith A. Gran, PUBLIC INTEREST LAW
CENTER OF PHILADELPHIA, Philadelphia, Pennsylvania,
Dianne Stamey Dycus, OFFICE OF THE ATTORNEY
GENERAL, Nashville, Tennessee, Kevin K. Russell,
UNITED STATES DEPARTMENT OF JUSTICE, CIVIL
RIGHTS DIVISION, Washington, D.C., for Appellees.
**ON BRIEF:** William M. Barrick, William B. Hubbard,
WEED, HUBBARD, BERRY & DOUGHTY, Nashville,
Tennessee, for Appellants. Judith A. Gran, PUBLIC
INTEREST LAW CENTER OF PHILADELPHIA,
Philadelphia, Pennsylvania, Dianne Stamey Dycus, OFFICE
OF THE ATTORNEY GENERAL, Nashville, Tennessee,
Kevin K. Russell, Mark L. Gross, Lisa Wilson Edwards,
UNITED STATES DEPARTMENT OF JUSTICE, CIVIL
RIGHTS DIVISION, Washington, D.C., Jack W. Derryberry,

———————————

[*] The Honorable John Feikens, United States District Judge for the
Eastern District of Michigan, sitting by designation.

system to comply with the United States Constitution, federal
statutes, and the courts' orders.

CMRA has not shown that any of the factors that determine
timeliness of intervention weigh in favor of allowing it to
intervene this late in either lawsuit. Therefore, we are left
with a "definite and firm conviction that the courts ... did not
commit a clear error of judgment." *Huey*, 230 F.3d at 228.

**B.  Whether CMRA has a substantial legal interest in
the subject matter of the pending litigation, which
may be impaired.**

CMRA claims that it has a substantial interest in this
litigation because of its economic interest in how community
service programs are funded and because of the lock-in
procedure established in the settlement agreements that affect
how community-based services are provided. We have held,
that:

> [I]n this circuit we subscribe to a "rather expansive
> notion of the interest sufficient to invoke intervention of
> right." *Michigan State AFL-CIO v. Miller*, 103 F.3d
> 1240, 1245 (6th Cir. 1997). For example, an intervenor
> need not have the same standing necessary to initiate a
> lawsuit. *See id.; Purnell v. City of Akron*, 925 F.2d 941,
> 948 (6th Cir. 1991). We have also "cited with approval
> decisions of other courts 'rejecting the notion that Rule
> 24(a)(2) requires a specific legal or equitable interest."
> *Miller*, 103 F.3d at 1245 (quoting *Purnell,* 925 F.2d at
> 948). "The inquiry into the substantiality of the claimed
> interest is necessarily fact specific." *Id*.

*Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999). We
review the decisions of the district courts de novo to
determine whether they properly held that CMRA did not
establish a substantial interest in the litigation. *See Stupak-
Thrall*, 226 F.3d at 471.

at 396.  This factor weighs against timely intervention by CMRA.

### 4.    Prejudice to the Parties

CMRA claims that there is no prejudice to the parties because CMRA does not dispute any issues in the present settlement agreements.  The district judges concluded that allowing intervention at this late stage of the proceeding would add a complicated issue to the litigation.  They held that the issues raised by CMRA went beyond the scope of the suit's initial focus on the constitutional issue and statutory rights of developmentally disabled residents of state facilities and would require considerable time and expense unnecessary in light of CMRA's access to other fora for resolution of its concern.  While CMRA has agreed not to dispute the terms of the settlement agreements, it has not made the same promise as to the remedial plans, the drafting of which involved the participation of more than 2100 stakeholders over many months.  There is a risk, to the extent CMRA seeks to intervene to discuss reimbursement rates, payment methodologies, or any other items on its list of grievances, that prejudice against the other parties will occur; such attempts may force the parties into collateral litigation over economic issues in cases that have already settled the merits of plaintiffs' claims.  *See Bradley v. Milliken*, 828 F.2d 1186, 1194 (6th Cir. 1987).  This factor also weighs against CMRA's intervention.

### 5.    Unusual Circumstances

In *People First*, CMRA admits that there are no unusual circumstances supporting intervention.  In *United States v. Tennessee* CMRA contends there are unusual circumstances because of the pending appeals and active proceedings concerning compliance with the district court's orders.  However, nothing in these proceedings has any effect on CMRA directly.  The State of Tennessee, not the CMRA, is ultimately responsible for the funding of its mental health

Jr., WARD, DERRYBERRY & THOMPSON, Nashville, Tennessee, for Appellees.

_____

### OPINION

_____

FEIKENS, District Judge.  The above captioned cases have been consolidated for purposes of this appeal.  Community Rehabilitation Agencies of Tennessee (CMRA) appeals the decisions of the two district courts that denied its petitions to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a).  Because CMRA's petitions are untimely and it has not advanced any substantial right to intervene, its appeals are denied.

### I. BACKGROUND

CMRA is an association of nonprofit agencies that provide services to retarded persons and those with mental disabilities in community placements. These services include case management, residential medical support, supported living, transportation, day services, and other services.  CMRA represents the interests of the community-based service provider industry in legislative, executive, and judicial matters.  CMRA has 75 members, including most of the community agencies in the State of Tennessee.  The vast majority of these community agencies is nonprofit, formed in local communities, and receives funding from the State and federal government.

CMRA appeals the decisions of Judge Robert L. Echols in *People First of Tennessee v. Clover Bottom Developmental Center* and Judge Jon P. McCalla in *United States v. State of Tennessee,* that denied its motions to intervene in the present

litigation.[1]    The two cases have been consolidated for purposes of this appeal.  The underlying lawsuits were brought by the United States and private plaintiffs against the State of Tennessee regarding the operation of its mental health system.  In each case, CMRA alleged in its petition that the State of Tennessee had violated the constitutional and statutory rights of individuals who are mentally retarded and developmentally disabled.  It attempted to intervene as of right and permissively in both cases pursuant to Federal Rule of Civil Procedure 24(a) and 24(b).  CMRA only appeals the decisions that denied them the ability to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a).

We will rely on the ample factual background provided in previous opinions in these two cases to describe the events leading up to CMRA's attempt to intervene.  *See United States v. State of Tennessee*, 181 F.3d 105 (Table), 1999 WL 357785 (6th Cir. 1999); *People First of Tenn. v. Arlington Developmental Ctr.*, 145 F.3d 1332 (Table), 1998 WL 246146 (6th Cir. 1998); *United States v. State of Tennessee*, 925 F. Supp. 1292 (W.D. Tenn. 1995); *People First of Tenn. v. Arlington Developmental Ctr.*, 878 F. Supp. 97 (W.D. Tenn. 1992).

## II. ANALYSIS

CMRA contends that it was improperly denied the right to intervene in the two cases pursuant to Federal Rule of Civil Procedure 24(a).  Under Federal Rule of Civil Procedure 24(a), an outsider may intervene as of right:

---

[1] In *People First*, Judge Echols held that CMRA did not timely file its motion to intervene and, even if it had, the organization has no substantial interest in the litigation.  In *United States v. Tennessee*, Judge McCalla held that CMRA lacked a substantial interest in the litigation, and in the alternative, held that the organization had not timely filed its motion to intervene.  For purposes of this appeal this distinction makes little difference.

concerning the types, quality, location, and accessibility of the proposed community health care services, along with the critical role of the community health care providers in providing these services to the State of Tennessee for the benefit of the Plaintiffs. Investigations, reports, judicial settlement conferences, and hearings have been conducted.

He held that this factor weighed against allowing intervention.

In *United States v. State of Tennessee*, Judge McCalla also found that this factor weighed against allowing CMRA to intervene.  He stated:

CMRA's interest developed, at the latest date, when the Community Plan was entered, which was in 1997.  The fiscal crisis of the State and other referenced broken promises of the State do not change the fact that CMRA's interests, even broadly construed, were apparent, at the latest date, when the Community Plan went into effect.

He held that CMRA waited too long before intervening.

We agree with the decisions of the district courts.  An entity that is aware that its interests may be impaired by the outcome of the litigation is obligated to seek intervention as soon as it is reasonably apparent that it is entitled to intervene.  *See NAACP v. New York*, 413 U.S. at 367, 93 S. Ct. at 2604; *Cuyahoga Valley Ry. Co. v. Tracy*, 6 F.3d 389, 396 (6th Cir. 1993); *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584 & n. 3 (6th Cir. 1982) (applicants "should have attempted to intervene when they first became aware of the action, rather than adopting a 'wait-and-see' approach").  Given that the settlement agreements specifically address training and the delivery of services in the community, "it would not have required unusual prescience on the part of the intervenors to recognize that their interests were implicated" when the decree was first proposed.  *Cuyahoga Valley Ry. Co.*, 6 F.3d

receive timely and appropriate services,' intervention by CMRA would not accomplish these aims. Finally, should CMRA hope, through intervention, to obtain higher rates and fewer obligations for community providers, this forum is not the appropriate forum to seek such relief."

In *United States v. State of Tennessee*, Judge McCalla held that "These stated purposes do not rise to the level requiring intervention." He held that, "The State of Tennessee is responsible for ensuring that these interests are protected and CMRA agencies are already participating in the implementation of the Remedial Order by providing services to the class members."

The interests asserted by CMRA for seeking intervention are not compelling. This factor also weighs against a finding of timely intervention.

**3.    The length of time preceding the application during which the Applicant knew or should have known of its interest in the cas**e.

CMRA admits it knew of the litigation in both cases at all stages and it also knew that its members had an interest in the outcome of the litigation. It contends that it believed that the existing parties to the two cases adequately represented its interest initially, and thus, it was not required to intervene in the lawsuits. It now claims that it only recently became apparent that these parties were not adequately representing its interest.

In *People First*, Judge Echols found that CMRA knew of the litigation at all stages and did not attempt to intervene when it knew that the interests of the community providers were affected by the litigation and proposed settlement agreement. He stated:

It is undisputed that CMRA has been aware of the lawsuits, the time-consuming negotiations between the parties and interest groups, the disputed issues

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The criteria that must be satisfied before intervention as of right will be granted are: (1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

A district court's denial of intervention as of right is reviewed de novo, except for the timeliness element, which is reviewed for an abuse of discretion. *See Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

**A.    Timeliness**

CMRA contends that now is the appropriate time to intervene and that it filed its motions timely because it learned shortly prior to bringing its motions that its interests were not being represented by the existing parties. We have identified several factors to be established in determining whether a request for intervention is timely:

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of

his interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989). "The determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Jansen*, 904 F.2d at 340. We will find an abuse of discretion only when left with the "definite and firm conviction that the court ... committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors" or where it "improperly applies the law or uses an erroneous legal standard." *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000) (citations and internal quotations omitted).

### 1.  Stage of the Proceeding

CMRA contends that the district judges abused their discretion when they denied the motions to intervene. CMRA argues it did not become aware of its independent interest to intervene until the implementation of the settlement agreements required its members to provide community-based services to individuals without a guarantee of sufficient payment by the State of Tennessee. CMRA cites to *Grubbs* and *Linton v. Commissioner,* 870 F.2d 343 (6th Cir. 1989), for the proposition that intervenors can timely appeal during the remedial stages of a consent decree. *See Grubbs supra*; *Linton*, *supra*.

We have recently stated that the time of intervention is not the determining factor but rather that "all circumstances" must be examined to determine the substantive progress that has occurred in the litigation. *See Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000) ("The propriety of intervention in any given case, however, must be measured under 'all circumstances' of that particular case.") (citing *NAACP v. New York*, 413 U.S. 345, 366, 93 S. Ct. 2591, 2603

(1973)). If the litigation has "made extensive progress in the district court before the appellants moved to intervene" then this factor weighs against intervention. *Id*.

In these cases, there was very little for either district judge to do when CMRA filed its petitions for intervention. In *People First*, Judge Echols had conditionally approved the initial settlement; the parties had prepared the Community Development Plan required by him. He had approved this plan, and the motion for final approval of the settlement was already pending before him. In *United States v. Tennessee*, Judge McCalla had approved several remedial orders to bring the mental health system into compliance with the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997) and had approved the Community Plan. All substantive issues had been resolved by both judges at the time of CMRA's filing for intervention and all that was required was final approval by the judges. This factor weighs strongly against allowing intervention by CMRA. *See Stupak-Thrall*, 226 F.3d at 475.

### 2.  Purpose of the Intervention

CMRA states that it simply requests the opportunity to be an active party in future remedial proceedings. CMRA would like the opportunity to participate in the implementation of the settlement agreements, to advocate and protect the regulatory and economic interests of community providers and to assure that sufficient other resources are provided in the community in a timely manner so that individuals receive timely and appropriate services. CMRA contends that throughout the remedial phase the courts and the parties will address matters which will directly implicate the scope, quality, timing and funding of services to be performed by CMRA members.

In *People First*, Judge Echols found that this argument did not state an adequate "purpose for the intervention." He stated, "Because it is the State's responsibility to assure that 'resources are provided in the community' and 'individuals