*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0398p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

BAY MILLS INDIAN COMMUNITY; SAULT STE. MARIE
TRIBE OF CHIPPEWA INDIANS; GRAND TRAVERSE
BAND OF OTTAWA & CHIPPEWA INDIANS; LITTLE
RIVER BAND OF OTTAWA INDIANS; LITTLE
TRAVERSE BAY BAND OF ODAWA INDIANS,

*Plaintiffs/
Intervenors-Appellees,*

*v.*

STATE OF MICHIGAN, et al.,

*Defendants-Appellees,*

MICHIGAN FISHERIES RESOURCES CONSERVATION
COALITION; STUART CHENEY; ROBERT ANDRUS;
WALLOON LAKE TRUST AND CONSERVANCY,

*Proposed Defendants-
Intervenors-Appellants.*

No. 04-1864

Appeal from the United States District Court
for the Western District of Michigan at Kalamazoo.
No. 73-00026—Richard A. Enslen, District Judge.

Argued: April 18, 2005

Decided and Filed: August 24, 2005[*]

Before: BOGGS, Chief Judge; RYAN and ROGERS, Circuit Judges.

---

[*]This decision was originally issued as an "unpublished decision" filed on August 24, 2005. On September 12, 2005, the court designated the opinion as one recommended for full-text publication.

---

**COUNSEL**

---

**ARGUED:** Stephen O. Schultz, FOSTER, SWIFT, COLLINS & SMITH, Lansing, Michigan, for Appellants. Kathryn E. Kovacs, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Marc D. Slonim, ZIONTZ, CHESTNUT, VARNELL, BERLEY & SLOMIN, Seattle, Washington, for Appellees. **ON BRIEF:** Peter R. Albertins, FOSTER, SWIFT, COLLINS & SMITH, Lansing, Michigan, for Appellants. Kathryn E. Kovacs, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Marc D. Slonim, Brian C. Gruber, ZIONTZ, CHESTNUT, VARNELL, BERLEY & SLOMIN, Seattle, Washington, Kathryn L. Tierney, BAY MILLS INDIAN COMMUNITY, Brimley, Michigan, Aaron C. Schlehuber, Sault Ste. Marie, Michigan, Bruce R. Greene, GREENE, MEYER & McELROY, Boulder, Colorado, John F. Petoskey, GRAND TRAVERSE BAND OF OTTAWA & CHIPPEWA INDIANS, Peshawbestown, Michigan, William Rastetter, OLSON, BZDOK & HOWARD, Traverse City, Michigan, William J. Brooks, Manistee, Michigan, James A. Bransky, Traverse City, Michigan, Allie Greenleaf Maldonado, Harbor Springs, Michigan, Marie Shamraj, Christopher D. Dobyns, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Lansing, Michigan, for Appellees.

---

**OPINION**

---

RYAN, Circuit Judge. This appeal is the latest episode in a 32-year-old dispute between the United States and the State of Michigan regarding the interpretation and enforcement of the 1836 Treaty of Washington, 7 Stat. 491. The appellants, Michigan Fisheries Resource Conservation Coalition (MFRCC), Stuart Cheney, Robert Andrus, and the Walloon Lake Trust and Conservancy, comprise a group of proposed intervenors who appeal from the district court's order denying their motion to intervene in the current phase of this case to determine the usufructuary rights of five Indian tribes under the Treaty. For the following reasons, we will affirm.

**I.**

This litigation has a lengthy history which is only briefly reviewed here. In 1836, the Ottawa and Chippewa Indian Nations and the United States government signed the Treaty of Washington. Under the terms of the Treaty, the Indians ceded some of their lands and waters, encompassing large portions of what is now the State of Michigan and the Great Lakes, to the United States government while reserving certain rights in the ceded territory. Article 13 of the Treaty provides, in part: "The Indians stipulate for the right of hunting on the lands ceded, with the other usual privileges of occupancy, until the land is required for settlement." 7 Stat. 491. The interpretation of the latter clause, and its application to modern circumstances, are in dispute in this litigation.

**A. The Tribes' Treaty Right to Fish in the Great Lakes**

The United States brought this lawsuit against the State of Michigan in 1973, on its own behalf and on behalf of the Bay Mills Indian Community, "to protect the tribe's rights to fish in certain waters of the Great Lakes" under the Treaty and to enjoin the State of Michigan's alleged interference with those rights. *United States v. Michigan*, 471 F. Supp. 192, 203 (W.D. Mich. 1979), *modified in part*, 653 F.2d 277 (6th Cir. 1981). Thereafter, the Bay Mills Indian Community and the Sault Ste. Marie Tribe of Chippewa Indians successfully moved to intervene as plaintiffs and added certain state officials as defendants. *Id.* at 203-04. The Michigan United Conservation Clubs (MUCC), a sportsman's group, also filed a motion to intervene as a defendant. *Id.* at 204.

Pursuant to a motion filed by the plaintiffs, the district court, in a written opinion, bifurcated the case into a declaratory phase and a remedial phase. The court planned to consider in the first phase "[w]hether the Indians reserved or retained fishing rights in the Great Lakes waters purportedly ceded by them under the Treaty of 1836," and whether the State of Michigan had "jurisdiction to regulate the exercise of those rights by treaty tribe members." The court declared that if such rights were found to exist and could be regulated by the State of Michigan, the court would proceed to the second phase to determine "which, if any, State regulations may be applied to the Indians in the exercise of their reserved rights."

In the same opinion, the district court denied MUCC's motion to intervene, noting that its decision was "based largely upon the fact that there will be separate trials as to the declaratory and remedial aspects of this case." The court explained that, although MUCC had an interest in the case, it had failed to meet its burden of demonstrating that the State of Michigan would not adequately represent its interest with respect to the issues to be decided in the declaratory phase. The court permitted MUCC to participate as *amicus curiae* and noted that MUCC could renew its motion to intervene once the status of the Indians' treaty rights had been decided. On appeal, more than 28 years ago, this court affirmed, concluding that the record did not indicate that MUCC was inadequately represented by the State of Michigan. *United States v. Michigan United Conservation Clubs*, 556 F.2d 583 (6th Cir. 1977) (unpublished disposition).

At the conclusion of the declaratory phase, the district court found that the Tribes retained "the right . . . to fish in the waters of the Great Lakes and connecting waters ceded by the Treaty of 1836." *United States v. Michigan*, 471 F.Supp. at 278. The court also concluded that the Tribes' right to fish in the Great Lakes could not be regulated by the State of Michigan except as authorized by Congress. *Id.* at 281. On appeal, this court affirmed in part, holding that "[t]he treaty-guaranteed fishing rights preserved to the Indians in the 1836 Treaty . . . continue to the present day as federally created and federally protected rights." *United States v. Michigan*, 653 F.2d at 278. However, this court also held that the State of Michigan could regulate the Tribes' fishing rights under certain circumstances, and remanded the case to the district court for further proceedings. *Id.* at 279-80. Meanwhile, during the pendency of the appeal, the district court permitted the Grand Traverse Band of Ottawa and Chippewa Indians to intervene in the case.

During the ensuing district court proceedings, the parties and *amici curiae* sought to resolve the conflicts between Indian and non-Indian interests regarding the management and allocation of the Great Lakes fishery in view of the Tribes' recognized treaty rights. In 1985, after extensive negotiations, the parties reached a settlement regarding the allocation of the Great Lakes fishery and signed an agreement for entry of a consent judgment, which was adopted by the district court and remained effective for 15 years. In 2000, the parties stipulated to the entry of another consent decree, to remain effective until 2020.

### B. The Tribes' Inland Treaty Rights

Before 2003, the parties were litigating claims involving only the Indians' right to fish in the Great Lakes, and did not seek any judicial determination regarding the Tribes' right to hunt and fish on inland lands and waters. In 2001, the United States circulated, but did not file, a draft supplemental complaint seeking declaratory and injunctive relief with respect to the Tribes' inland treaty rights. On September 17, 2003, the State of Michigan formally launched the current phase of the litigation by filing a Motion for Leave to File a Counterclaim against the Tribes. The State of Michigan asserted that the purpose of the counterclaim was "to begin the process of determining whether any Treaty-reserved usufruct[u]ary rights under the 1836 Treaty of Washington outside of the Great Lakes and connecting waters exist." The counterclaim sought "a declaration that [the Tribes] do not retain any off-reservation hunting and/or fishing rights in inland areas under the 1836 Treaty of Washington, . . . except for [sic] on federal lands, that have never passed out of federal

control and to [sic] which the exercise of those rights is not inconsistent with the purpose for federal ownership." The district court entered an order granting the motion on November 4, 2003, and the counterclaim was filed the next day.

On January 5, 2004, the Tribes filed a joint reply to the State of Michigan's counterclaim. The Tribes elected not to assert sovereign immunity as a defense, but instead, denied that "the Treaty Right is limited to federal lands that have never passed out of federal control and on which the exercise of the Treaty Right is not inconsistent with the purpose of federal ownership."

In anticipation of a status conference scheduled for February 19, 2004, the parties filed a Joint Status Report in which they jointly proposed a litigation-management schedule premised on a 20-day trial. According to the Report, the parties had agreed that "[d]iscovery and trial in this phase of this litigation [would] be limited to the issues raised by Defendants' counterclaim, the Plaintiff-Intervenors' reply thereto, and the United States['] Supplemental Complaint."

At the status conference, the parties discussed the expected course of the proceedings and the witnesses to be called at trial. Because the State of Michigan had not named the United States as a counter-defendant, believing it to be immune from suit, counsel for the United States informed the court that he would be filing a supplemental complaint so that the issue raised by the State of Michigan's counterclaim would be final and binding on all parties. Counsel for the proposed intervenors also participated in the conference and notified the parties of his intent to file a Motion to Intervene in the case.

On February 23, 2004, the district court entered a Case Management Order, mandating, among other things, that all motions for joinder of parties and all motions to amend the pleadings be filed by April 19, 2004. The United States filed a timely motion for leave to file its supplemental complaint. The complaint did not seek to expand the issues raised in the State of Michigan's counterclaim, but merely sought a declaratory judgment that the "Tribes continue to have treaty-protected rights to hunt, fish, trap and gather on inland lands and water within the area ceded by the 1836 Treaty that are not required for settlement within the meaning of the Treaty." The Tribes stipulated to the filing of the United States' supplemental complaint, and the district court granted the motion.

In order to give counsel for the proposed intervenors an opportunity to review the United States' supplemental complaint, the parties stipulated that the proposed intervenors could delay filing their Motion to Intervene until April 26, 2004, one week after the United States was scheduled to file its supplemental complaint, and one week after the court's deadline to file motions for joinder of parties. On April 27, 2004, the district court entered an order accepting *post hoc* the proposed intervenors' tardy Motion to Intervene, stating that "[t]he Stipulation appears just and will not delay this litigation."

Pursuant to Federal Rule of Civil Procedure 24(c), the proposed intervenors submitted with their motion a proposed answer to the United States' supplemental complaint. The answer requested that the court "issue a Declaratory Judgment holding that the . . . Tribes do not have any treaty-protected rights to hunt, fish, trap or gather on inland lands and waters within the area covered by the 1836 Treaty." The answer also set forth a number of "affirmative defenses," which denied that the Tribes retained certain usufructuary rights under the Treaty, including the right to remove live and dead timber, the right to access lakes with or without public access by crossing private property, and the right to hunt on commercial forest lands. The Tribes opposed the Motion to Intervene. The State of Michigan did not file any opposition.

On June 15, 2004, the district court denied the proposed intervenors' Motion to Intervene either permissively or as of right. The court first noted that the motion was filed almost six months

after the State of Michigan had filed its counterclaim. The court also explained that "the parties and the Court established a schedule for discovery and trial premised on the narrow issue of whether the [Tribes] have retained usufructuary rights on inland property which has passed out of federal control." The court stated that the proffered answer indicated that the proposed intervention "would greatly complicate the suit by requiring adjudication of many proposed Affirmative Defenses, including factually intensive decision making as to the regulation of separate usufructuary rights." The court was concerned that the affirmative defenses implicated regulatory issues which would require "prolonged discovery." In view of these circumstances, the court concluded that the motion was untimely, and further, that "[t]he interests of the Proposed Intervenors [were] adequately represented by Defendants and [would] not be impaired in the absence of intervention." The proposed intervenors appealed.

## II.

Under the Federal Rules of Civil Procedure, there are two avenues by which a non-party can intervene in a pending case: Intervention of Right and Permissive Intervention. Intervention of right is governed by Rule 24(a), which provides, in pertinent part:

> **(a)      Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

We have held that, to intervene as of right under Rule 24(a)(2), a proposed intervenor must establish the following four elements: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest. *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999). "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989). We review a district court's denial of intervention as of right *de novo*, except for the timeliness element, which is reviewed for an abuse of discretion. *Grutter*, 188 F.3d at 398.

We first address the question whether the proposed intervenors are adequately represented by the State of Michigan because this issue is dispositive of this appeal. Applicants for intervention bear the burden of proving that they are inadequately represented by a party to the suit. *Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290, 293 (6th Cir. 1983). This burden has been described as minimal because it need only be shown "that there is a *potential* for inadequate representation." *Grutter*, 188 F.3d at 400. Nevertheless, applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit. *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).

The proposed intervenors insist that the defendants will not adequately represent their interests because the state's "duty is to the broader public" and it "has no duty to defend their interests" as private property owners. They contend that experience verifies that the state cannot adequately defend private property rights.

In order to assess whether the proposed intervenors are adequately represented by the State of Michigan, it is necessary to identify the claims currently pending before the district court. The

scope of the issues in the current phase of this litigation was defined by the State of Michigan's counterclaim, which merely sought a declaration that, with the exception of certain federal lands that have never passed out of federal control, the Tribes' treaty-reserved rights to hunt and fish outside the Great Lakes have ceased to exist. Neither the Tribes' answer to this counterclaim nor the United States' supplemental complaint expanded on these issues. Further, the parties' Joint Status Report includes an agreement that discovery in this phase of the litigation would be limited to the issues raised in the parties' respective pleadings. The district court adopted the parties' report and apparently set a January 2006 trial date with the understanding that, initially at least, only the threshold issue concerning the existence of the Tribes' inland treaty rights would be considered. The proposed intervenors have failed to articulate why the State of Michigan's legal representation concerning this issue is inadequate. The relief requested by the proposed intervenors and the State of Michigan in their respective pleadings is nearly identical in that they both seek a declaration that the Tribes do not retain any off-reservation usufructuary rights under the Treaty. The proposed intervenors have not identified any separate arguments unique to them that they would like to make concerning the existence of the Tribes' inland rights, nor have they shown that the State of Michigan would fail to present such arguments to the district court.

Rather than identifying any weakness in the state's representation in the current phase of the proceedings, the proposed intervenors seem more concerned about what will transpire *in the future* should the district court determine that the Tribes' inland treaty rights continue to exist. This concern is apparent when reviewing the affirmative defenses set forth in their proposed answer, which prematurely seek to inject management and regulatory issues that are not yet before the court. In this regard, it is revealing that the proposed intervenors believe intervention is necessary to protect their divergent interests "*in the event of a regulatory phase* addressing usufructuary privileges." (Emphasis added.) Similarly, they worry "that the narrow issue asserted will mysteriously snowball or leave the door open to other Treaty right issues." While the proposed intervenors may be legitimately concerned about these future issues, they are not now, and possibly never will be, before the district court.

The district court's denial of intervention on the grounds of adequate representation is, in all relevant respects, indistinguishable from its earlier denial of MUCC's Motion to Intervene, a decision which this court affirmed on appeal. In denying MUCC's motion, the district court explained that its decision was largely dependent on the fact that the court had bifurcated the case into two phases. The court found that the State of Michigan would adequately represent MUCC's interests during the first phase, which addressed only "the issues as to the existence of any treaty right and the bare legal question of whether the State of Michigan may regulate such a right." Similarly, there is no indication here that the State of Michigan will not adequately represent the proposed intervenors' interests during the current phase of the proceedings, which is only concerned with the question of whether the Tribes' inland treaty rights continue to exist.

For these reasons, we conclude that the proposed intervenors have not met their burden in demonstrating that the State of Michigan's representation is inadequate in the current phase of the proceedings. Because a showing of inadequate representation is a necessary requirement to intervene as of right, we affirm the district court's decision on this basis alone without addressing the remaining requirements. *See Grubbs*, 870 F.2d at 345.

### III.

The proposed intervenors also appeal from the district court's denial of their motion for permissive intervention. Permissive intervention is governed by Rule 24(b), which provides, in pertinent part:

> **(b)     Permissive Intervention.**  Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).

To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997).  Once these two requirements are established, the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed. *Id.* "The denial of permissive intervention should be reversed only for clear abuse of discretion by the trial judge." *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991).

The district court noted that the proposed intervenors' answer would complicate the case by requiring the adjudication of fact intensive issues regarding the regulation of separate usufructuary rights.  Although the proposed intervenors did not request a delay in the proceedings, the court believed that their intervention would prejudice the original parties because they "would need prolonged discovery on the regulatory issues raised."  The court had already "established a schedule for discovery and trial premised on the narrow issue of whether the Plaintiff-Intervenors have retained usufructuary rights on inland property which has passed out of federal control."

Because the proposed intervenors' answer prematurely seeks to inject management and regulatory issues into the current phase of the proceedings, the court rightly observed that permitting intervention would have prejudiced the original parties.  Accordingly, the district court did not abuse its discretion in denying the proposed intervenors' motion for permissive intervention.

## IV.

Although we conclude that the State of Michigan will adequately represent the proposed intervenors' interest in this case, we express no opinion as to the adequacy of the State of Michigan's representation should the scope of the Tribes' usufructuary rights become an issue. Should the litigation proceed that far, the proposed intervenors may renew their motion.  The timeliness of such a motion should be judged from the point in time at which the scope of the Tribes' usufructuary rights, if any, are considered by the district court.

For the foregoing reasons, the district court's order denying the proposed intervenors' motion to intervene is **AFFIRMED**.