GRIFFIN, Circuit Judge.
Appellant White Hat Management, LLC (“White Hat”) appeals the district court’s denial of its petition to intervene in the underlying action as a matter of right pursuant to Federal Rule of Civil Procedure 24(a) and as a matter of discretion pursuant to Federal Rule of Civil Procedure 24(b). Specifically, White Hat contends that, as a community school management company, it has a substantial right to intervene in litigation alleging that the funding provisions of the Community Schools Act, O.R.C. § 3314 (the “Act”), violate both the state and federal constitutions.
Although we base our holding on different grounds than the district court, we nevertheless affirm.
*484 I.
The facts of this case are undisputed. In June 2004, the original plaintiffs, education association members or parents of school-aged children in Ohio, filed a complaint purporting to represent Ohio taxpayers against the Ohio Department of Education, the Ohio Board of Education, and the Ohio Superintendent of Public Instruction, Susan Tave Zelman, (“defendants”) alleging that the Act violates both the Ohio and the federal constitutions. In short, plaintiffs seek declaratory and injunctive relief, contending that Ohio’s funding statute for community schools-alternatives to traditional public schools-violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States.[1] Defendants filed their answer in July 2004. White Hat petitioned the court to intervene as a defendant in October 2004.
White Hat is a professional education management firm with headquarters in Akron, Ohio. White Hat does not operate a community school, but its enterprise involves contracting with community schools to provide services in aid of the community schools’ operation. The complaint at issue does not directly challenge any of the contracts to which White Hat is a party. Instead, the complaint challenges the constitutionality of the Act that funds the community schools. These community schools, in turn, contract with service providers such as White Hat.
Thus, White Hat’s primary motivation for seeking intervention is concededly economic: because “[sjtate funds are the sole source of funding for community schools ... [ijf [sjtate funds are taken away from community schools, they will be forced to close.” Nevertheless, White Hat contends that it also has an interest in fulfilling its “mission” — to provide an alternative education option for Ohio students.
The district court denied White Hat’s petition to intervene on September 26, 2005, both as a matter of right and of discretion. White Hat timely appealed.
II.
Except as to issues of timeliness, which are not present in this case, we review de novo a district court’s denial of a motion to intervene pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. Stupak-Thrall v. Glickman, 226 F.3d 467, 471 (6th Cir.2000) (citations omitted).
Federal Rule of Procedure 24(a) provides that a non-party may intervene in litigation as of right “when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.” Fed. R. Crv. P. 24(a)(2). We have construed Rule 24(a) to require a party attempting to intervene to establish: “ ‘(1) timeliness of the application to intervene, (2) the applicant’s substantial legal interest in the case, (3) impairment of the applicant’s ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court.’” Providence Baptist Church v. Hillandale Comm., Ltd., 425 F.3d 309, 315 (6th Cir.2005) (quoting Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir.1997)).
*485 The district court properly cited the four-part test governing a potential party’s right to intervene in pending litigation. In its application of the test, the district court ruled that: (1) the motion to intervene was timely; (2) White Hat satisfied the liberal inquiry that it had a substantial interest in the matter; (3) White Hat satisfied the minimal burden demonstrating that an impairment of its substantial legal interest was possible if intervention was denied; and (4) nevertheless, White Hat failed to demonstrate that the existing defendants would not adequately represent its interests. Accordingly, the district court denied White Hat’s petition. On appeal, White Hat contends that the district court correctly held that White Hat satisfied the timeliness, substantial interest, and impairment requirements, but argues that it erroneously held that White Hat did not satisfy the minimal burden concerning the inadequacy of the present representation. We disagree. Specifically, we conclude that, pursuant to United States v. Tennessee, 260 F.3d 587 (6th Cir.2001), White Hat lacks a substantial legal interest in the litigation for purposes of Rule 24(a).
As the district court noted, the Sixth Circuit subscribes to “a rather expansive notion of the interest sufficient to invoke intervention of right.” Providence Baptist Church, 425 F.3d at 315 (citations omitted); see also Purnell v. City of Akron, 925 F.2d 941, 948 (6th Cir.1991); Bradley v. Milliken, 828 F.2d 1186, 1192 (6th Cir.1987) (“[T]his court has acknowledged that ‘interest’ is to be construed liberally.”) Notably, “an intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing.” Providence Baptist Church, 425 F.3d at 315 (citing Assoc. Builders & Contractors v. Perry, 16 F.3d 688, 690 (6th Cir.1994)).
We undoubtedly construe Rule 24 “interests” expansively and have stated that “close cases should be resolved in favor of recognizing an interest under Rule 24(a).” Miller, 103 F.3d at 1247. Although White Hat urges us to conclude that such a close case exists here, we are unpersuaded. Instead, we view this case as comparable to United States v. Tennessee. In Tennessee, a non-profit contract service provider (“CMRA”) for developmentally disabled persons sought to intervene in a constitutional and statutory action challenging the state’s treatment of developmentally disabled persons for purposes of participating in settlement agreements. Tennessee, 260 F.3d 587. First, CMRA asserted an “economic interest in assuring adequate funding for implementation of the settlement agreements and its contractual rights in agreements with the State to provide community-based services.” Id. at 596. Second, the service provider alleged an interest in a specific provision of the contested law. Id. In assessing whether these interests were sufficient, we reasoned:
The parties to these lawsuits have entered into consent decrees aimed at guaranteeing that Tennessee provide at least the minimum level of care to developmentally disabled individuals required by federal law. CMRA does not challenge the terms of these agreements or contend that they fall below what federal law requires. CMRA is only concerned with the level of funding provided by the State to community-based service providers. CMRA’s claimed interest does not concern the constitutional and statutory violations alleged in the litigation, but rather how much its members get paid for providing services. CMRA has an interest in the economic component of the settlement but the consent decrees obligate the State, not CMRA, to fund community services adequately. By the terms of the settle *486 ment agreements, it is the responsibility of the State of Tennessee to provide adequate and appropriate community services to members of the plaintiff class. Implementation of the settlement agreement does not alter CMRA’s economic interests with the State to provide support and services to the class members nor its ability to negotiate the terms of these contracts. Further, as found by both district court judges, CMRA can protect its economic interests in contract negotiations with the State by lobbying the legislative and executive branches for favorable funding arrangements, and in state courts by suing to enforce its contractual rights.
Id. at 595-96 (emphasis added). Accordingly, we held that “CMRA’s economic interest and its interest in the lock-in provision do not reach the level of requisite substantial interest required to intervene.” Id. at 596.
White Hat attempts to distinguish Tennessee, alleging that its holding was based largely on the fact that CMRA waited too long to enter the litigation and that CMRA’s motivation was to protect its participation in “future remedial proceedings.” Further, White Hat alleges that it is motivated by both economic interests and for reasons relating to the preservation of this educational alternative. Nevertheless, we conclude that the Tennessee holding with respect to whether a “substantial legal interest” exists is controlling. Like CMRA, White Hat’s primary interest is economic. It is not a party to any challenged contract nor is it directly targeted by plaintiffs’ complaint. Instead, White Hat seeks to preserve the constitutionality of the community school’s funding structure so that it might continue to contract with community schools. Similar to CMRA, White Hat’s “claimed interest does not concern the constitutional and statutory violations alleged in the litigation,” but rather “an interest in the economic component.” Tennessee, 260 F.3d at 596. We conclude that this interest is insufficient to comprise a substantial legal interest for purposes of Rule 24(a) intervention. Like the proposed intervener in Tennessee, White Hat “can protect its economic interests in contract negotiations with the State by lobbying the legislative and executive branches for favorable funding arrangements.... ” Id. at 596-97.
Accordingly, we hold that White Hat does not have a substantial legal interest for purposes of Rule 24(a) intervention, and, therefore, we affirm the district court’s denial of White Hat’s petition to intervene on this basis. See Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 243 (6th Cir.2004) (“[W]e may affirm a decision of the district court if correct for any reason, including one not considered below.”) (internal quotation and citation omitted).
III.
Alternatively, White Hat appeals the district court’s denial of its petition for permissive intervention. Federal Rule of Civil Procedure 24 likewise sets forth the standard for permissive intervention:
Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant’s claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
Fed. R. Civ. P. 24(b).
“So long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice to the original parties, and any other relevant factors is reviewed for an abuse of discretion.” Miller, *487 103 F.3d at 1248 (citing Purnell, 925 F.2d at 950-51.)
In denying White Hat’s petition for permissive intervention, the district court relied upon “undue and unnecessary delay” as justification for the denial. Specifically, the district court concluded that “[w]hile White Hat’s perspective is different from that of the Defendants, it has offered nothing to indicate that its contribution will add anything of unique value.... Allowing it to intervene would result only in the duplication of the efforts of the existing Defendants and undue delay of the litigation.”
Although White Hat contends that there is insufficient evidence to support this conclusion, this likelihood of duplication is more obvious when viewed in light of White Hat’s proposed answer to plaintiffs’ complaint. There, White Hat attempts to argue that plaintiffs have not raised every necessary and indispensable party, which, according to plaintiffs, indicates that White Hat is requesting the joinder of “every community school, proposed community school, and management company ... a finding [that] would raise the number of defendants to well over two hundred.” In short, the district court had evidence before it, and was persuaded, that White Hat’s presence in the litigation “would result only in the duplication of the efforts of the existing Defendants and undue delay of the litigation.” We conclude that the district court’s resolution of this issue was not an abuse of its discretion. Accordingly, we affirm.
IV.
For the foregoing reasons, we affirm the order of the district court.

. Plaintiffs also allege that the Act violated guarantees of Ohio's constitution. These claims are pending in state court and need not be addressed here.