CLAY, Circuit Judge,
concurring in the judgment.
Although I agree with the majority’s decision to affirm the order of the district court, I would do so because White Hat has not offered any reason to support its contention that the State of Ohio may fail to adequately represent its interests in the instant litigation and not because White Hat’s economic interest is insufficient to support intervention as of right. Whether White Hat’s economic interest is sufficient to support intervention as of right is not controlled by this Court’s decision in United States v. Tennessee, 260 F.3d 587 (6th Cir.2001), and constitutes a complex question of first impression in this Circuit. Consequently, I believe the issue would be more properly treated in a thorough, published opinion, after extensive briefing. Inasmuch as this case can be easily resolved on the ground that White Hat has failed to show that the State of Ohio may not adequately represent its interest in the instant litigation, there is no need to address the sufficiency of White Hat’s economic interest.
I.
This Circuit has not definitively resolved whether an economic interest can ever suffice to support intervention as of right. On the one hand, we have repeatedly stated that an applicant need not have a “legally enforceable right” to a specific outcome in the litigation in order to have a “substantial legal interest” in the subject matter of the litigation. Grutter v. Bollinger, 188 F.3d 394, 399 (6th Cir.1999) (citing Miller, 103 F.3d at 1245 and Purnell, 925 F.2d at 948); see also Tennessee, 260 F.3d at 595. Thus, presumably a sufficiently substantial economic interest could support intervention as of right. On the other hand, in United States v. Tennessee, 260 F.3d 587 (6th Cir.2001), we rejected a non-profit’s economic interest in contracting with the State of Tennessee as sufficient to support intervention as of right.
*488 In rejecting the particular applicant’s economic interest in Tennessee, 260 F.3d 587 (6th Cir.2001), however, we did not purport to definitively resolve whether any economic interest could support intervention as of right. Instead, we held that an economic interest unrelated to the alleged statutory and constitutional violations could not support intervention as of right. Id. at 595. In Tennessee, the United States filed suit to enforce the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997 — 1997j, and the Fourteenth Amendment of the United States Constitution. United States v. Tennessee, 925 F.Supp. 1292, 1296 (W.D.Tenn.1995). After a trial at which it was established that Tennessee had violated federal law, the district court imposed a remedial plan on Tennessee. Id. at 1297. CMRA, an association of non-profit agencies that provide services to the mentally disabled, applied to intervene, alleging that because its members contracted with the Tennessee to provide services to the mentally disabled, it had a financial interest in the resolution of Tennessee’s violations. Tennessee, 260 F.3d at 595. It appears that CMRA was essentially alleging that Tennessee’s implementation of the remedial plan would drain its financial resources, potentially causing Tennessee to pay CMRA less for its services. This Court rejected CMRA’s argument, explaining that CMRA’s interest in funding “did not concern the constitutional and statutory violations alleged in the litigation, but rather how much its members get paid for providing services.” Id.
Because Tennessee did not definitively resolve whether an economic interest could ever suffice to support intervention as of right, it does not control the outcome of this case. In contrast to the interest of the applicant in Tennessee, White Hat’s economic interest directly concerns the constitutional violations alleged by Plaintiffs. Plaintiffs allege that the funding provisions of institutions with which White Hat contracts are unconstitutional. If Plaintiffs prevail, Ohio, and hence the community schools, will be legally prohibited from expending state resources to fulfill the community schools’ contract obligations with White Hat unless and until Ohio devises a constitutional funding scheme. This differs significantly from Tennessee, where the lawsuit might have left Tennessee with less money to pay CMRA, but certainly not in danger of prohibiting Tennessee from fulfilling its legal obligations to CMRA.
Even if Tennessee could be interpreted to hold that an economic interest never suffices to support intervention as of right, however, it would not control the outcome of the instant case. Importantly, the portion of the Tennessee opinion addressing the sufficiency of the intervenor’s interest is dicta. Before reaching the sufficiency of CMRA’s interest, the Tennessee court had already held that CMRA was not entitled to intervention on timeliness grounds. Thus, the court’s discussion of whether CMRA’s economic interest was sufficient to support intervention was unnecessary to the disposition of the case. Id. at 595; see also Black’s Law Dictionary 454 (6th ed. 1990) (defining dicta as “Opinions of a judge which do not embody the resolution or determination of the specific case before the Court”).
Not only is there no controlling case law in this Circuit, there is no clear consensus outside this Circuit on whether an economic interest suffices to support intervention as a matter of right. See 7C Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1908, 263 (2d ed. 1986) (“There is not as yet any clear definition, either from the Supreme Court or from the lower courts, of the nature of the ‘interest relating to the property or transaction which is the *489 subject of action----”’) At least two Circuits have held that an economic interest may be sufficient to support intervention as of right. New York Pub. Interest Research Group, Inc. v. Regents of the University of the State of New York, 516 F.2d 350, 352 (2d Cir.1975) (per curiam); United States v. Alisal Water Corp., 370 F.3d 915, 919-20 (9th Cir.2004) (holding that an economic interest supports intervention as of right where it is concrete and related to the subject matter of the litigation). There is, however, authority to the contrary. See Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 221 (3d Cir.2005). Consequently, I do not believe that we should attempt to resolve this issue in a perfunctory manner in an unpublished opinion.
II.
Inadequate Representation
Nonetheless, I would also affirm the order of the district court. I would do so, however, for the reason given by the district court: White Hat has failed to establish that the State of Ohio may not adequately represent its interests. This Court entertains a presumption that the defendant will adequately represent an applicant’s interests and the applicant bears the burden of overcoming this presumption. Bradley v. Milliken, 828 F.2d 1186, 1192 (6th Cir.1987). To overcome the presumption of adequacy, “the [applicant is] not required to show that the representation will in fact be inadequate” but only “that the existing defendant ... may not adequately represent [his or her] interests.” .. Grutter, 188 F.3d at 400 (internal citations omitted) (emphasis added). This Court has found that an applicant presents a sufficient probability of inadequate representation where: (1) the defendant has an incentive to disregard possible defenses that the applicant would like to present, id. at 400; or (2) there is some evidence that the defendant will choose not to appeal an adverse ruling, Miller, 103 F.3d at 1248. In contrast, this Court has stated that an applicant fails to show a sufficient potential for inadequate representation where there is no evidence that (1) the defendant colluded with an opposing party, (2) the defendant and the applicant may have divergent interests in the litigation, or (3) the defendant actually failed to fulfill his duty to represent. Bradley, 828 F.2d at 1192.
In this case, White Hat has failed to meet its burden to show that the State of Ohio may fail to adequately represent White Hat’s interests. White Hat has not pointed to any failure by Ohio to represent White Hat’s interests in the instant suit nor articulated any possible future scenario in which its interests diverge from the State of Ohio. White Hat presents two theories under which it claims that its interests may diverge from the State of Ohio, both equally unpersuasive. First, White Hat argues that its interests may diverge from Ohio’s interests because Ohio represents all community schools whereas White Hat only represents schools with which it contracts. Second, White Hat argues that its interests may diverge from Ohio’s because Ohio’s role is that of a regulator of the OCSA and White Hat’s role is of one regulated by the OCSA.
While these arguments could carry force in a different context, they are unpersuasive as applied to the facts of this case. White Hat’s first argument is unpersuasive because the interests of the individual community schools do not, and will not, differ in this litigation. The OCSA’s funding scheme is either unconstitutional as applied to all of the schools or none of the schools. Thus, the school’s interests and potential defenses are necessarily identical in the instant litigation. Consequently, there is no reason to believe White Hat’s *490 interests may diverge from Ohio’s simply because its interests relate only to specific schools.
White Hat’s second argument — that its interests may diverge from Ohio’s interests because is a regulated entity while Ohio is a regulator — is equally unpersuasive. White Hat seems to argue both that (1) its status as a regulated entity means that it may have a different interest in the remedying the funding situation should the OCSA be declared unconstitutional and that (2) the mere fact that it is a regulated entity and Ohio is a regulator is grounds for assuming inadequate representation. First, White Hat may very well have different interests in remedying the funding situation should the OCSA be declared unconstitutional. However, this possible future divergence of interests does not bear on White Hat’s or Defendant’s interests in the instant case. A new funding scheme may only be enacted by the Ohio legislature. De Rolph v. State, 78 Ohio St.3d 193, 677 N.E.2d 733, 747 n. 9 (1997) (declaring unconstitutional, but refusing to remedy, school funding legislation because such legislation is the province of the legislature). Neither the district court nor any party to this litigation has the power to devise a new funding scheme on its own. Cf. Stupak-Thrall v. Glickman, 226 F.3d 467, 482 (6th Cir.2000) (Moore, Circuit Judge, dissenting) (arguing that applicant’s, Wilderness Association, interests would not be adequately represented in settlement negotiations by the federal government, who had the authority to devise remedy in settlement). Accordingly, White Hat’s participation in this suit is unnecessary to protect its interest in a new funding scheme if the OCSA’s current scheme is declared unconstitutional. To protect this interest, White Hat should lobby the Ohio legislature.
Next, the mere fact that White Hat is a regulated entity and Ohio is a regulator is not grounds for assuming that White Hat’s interests will diverge from Ohio’s, and thus, that Ohio may not adequately represent White Hat. To accept this argument would render both the presumption of adequate representation established Bradley, 828 F.2d at 1192, and the language of Rule 24 permitting intervention as of right only when the defendant is unable to adequately represent the applicant’s interests meaningless. Courts in this Circuit would be required to grant intervention whenever a private party with a sufficient interest attempted to intervene in litigation against a state. Moreover, the cases in this Circuit have generally required something more than mere differing relationship to the subject matter of the litigation. For example, in Grutter this Court held that minority students may not be adequately represented by the University of Michigan in a suit challenging the University’s affirmative action admissions policy because the students articulated a concrete situation in which their interests diverged from the University. 188 F.3d at 400-01. Specifically, the students contended that Michigan might hesitate to present evidence of its own past discrimination in order to justify its affirmative action program. Id. at 401. Because no entity is eager to present evidence of its own misdeeds, the students’ theory was believable. See id.
Similarly, in Jansen v. City of Cincinnati, 904 F.2d 336, 343 (6th Cir.1990), the applicants presented evidence that the defendant would not rely on a specific affirmative defense that the applicants believed was warranted. In Jansen, several white firefighters and persons seeking firefighter positions sued the City of Cincinnati, challenging a consent decree from a previous lawsuit, which required Cincinnati to establish an affirmative action hiring / promotion system for Cincinnati’s fire department. Id. at 338. The plaintiffs from the *491 previous lawsuit, African-American firefighters, attempted to intervene to protect their interests in the remedies established by the consent decree. Id. at 338-39. The applicants offered arguments in support of Cincinnati’s interpretation of the consent decree that the City had failed to raise in its answer to the complaint. Id. at 343. Specifically, the applicants cited paragraph 25 of the consent decree, which was not cited by the City, as a basis for the City’s behavior. Id. Thus, this Court determined that the applicants had demonstrated a sufficient probability of inadequate representation.
Yet again, in Miller, this Court held that an applicant, the Michigan Chamber of Commerce (“MCC”), had demonstrated a sufficient possibility that the State of Michigan might not adequately represent its interests. 103 F.3d at 1247-48. The MCC applied to intervene in a suit by labor unions, challenging to Michigan’s campaign finance law. Id. at 1243. This Court held that MCC had met its burden both because its role differed from Michigan’s role (regulator v. regulated) and because there was evidence that Michigan had already failed to represent the MCC’s interests. Id. at 1247-48. Specifically, Michigan had already failed to appeal a preliminary injunction, which while potentially in the interest of Michigan, was not in the interest of the MCC. Id. at 1248. In light of Michigan’s failure to appeal the preliminary injunction, the Court determined that the MCC’s status as a regulatee created interests in the litigation that the State of Michigan, as a regulator, would not adequately represent. Id.
In contrast, in the United States v. Michigan, 424 F.3d 438, 444 (6th Cir.2005), this Court found that an applicant had not met its burden of showing a potential for inadequate representation. It explained:
The relief requested by the proposed intervenors and the State of Michigan in their respective pleadings is nearly identical in that they both seek a declaration that the Tribes do not retain any off-reservation usufructuary rights under the Treaty. The proposed intervenors have not identified any separate arguments unique to them that they would like to make concerning the existence of the Tribes’ inland rights, nor have they shown that the State of Michigan would fail to present such arguments to the district court.
Id. (emphasis added). The panel’s reasoning indicates that an applicant has the burden to, at a minimum, articulate a potential scenario in which its interests may diverge from the defendant’s interests. Inasmuch as White Hat has failed to articulate any scenario in which its interests may diverge from Ohio’s interests, I would hold that "White Hat failed to establish inadequate representation.
III.
Conclusion
For the reasons set forth above, I would affirm the order of the district court denying White Hat’s application to intervene.