828 F.2d 1186
 8 Fed.R.Serv.3d 1189, 41 Ed. Law Rep. 861
 Ronald BRADLEY; et al., Plaintiffs-Appellees,
Black Parents for Quality Education, and Ludington School
Community Organization; et al., Proposed
Plaintiffs Intervenors-Appellants,
v.
William MILLIKEN; et al., Defendants-Appellees,
Detroit Federation of Teachers Local 231, AFL-CIO,
Intervening Defendant- Appellee.
 No. 86-1487.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 4, 1987.
Decided Sept. 18, 1987.
Rehearing and Rehearing En Banc Denied Dec. 1, 1987.
 
 Thomas I. Atkins (argued), Brooklyn, N.Y., Jeanne E. Mirer, Detroit, Mich., for appellants.
 George T. Roumell (argued), Theodore Sachs, Detroit, Mich., Horace Stone, Baltimore, Md., Janice L. Burns, Grover Hankins (argued), Paul Zimmer (argued), Asst. Atty. Gen., Lansing, Mich., for appellees.
 Before MERRITT and RYAN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 CONTIE, Senior Circuit Judge.
 
 
 1
 Black Parents for Quality Education (BPQE), Ludington School Community Organization (LSCO) and approximately sixty individuals, appeal from the district court's denial of their motion to intervene in the advanced remedial stage of this Detroit school desegregation case. Proposed intervenors assert that they had a right to intervene under Rule 24(a) or, alternatively, that the district court abused its discretion in denying their motion for permissive intervention under Rule 24(b). Fed.R.Civ.P. 24(a), (b). For the following reasons, we affirm the district court's judgment.
 
 I.
 
 2
 This complaint was initially filed as a class action suit on August 18, 1970, by parents and children in the Detroit public school system, as well as the Detroit Branch of the National Association for the Advancement of Colored People (NAACP) which was recognized as a party-plaintiff and a class representative. The complaint alleged that the Detroit School Board, the Superintendent of Public Instruction and various local and state officials had engaged in intentional racial segregation of the Detroit public schools. On prior appeals, state and local authorities were found liable for intentional discrimination, Bradley v. Milliken, 484 F.2d 215 (6th Cir.1973) (en banc), aff'd in part, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974), and a desegregation plan incorporating the use of educational components was upheld. Bradley v. Milliken, 540 F.2d 229 (6th Cir.1976), aff'd, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). More recently, in September 1985, we reversed a district court order terminating its jurisdiction over the community relations program, the uniform code of student conduct and the monitoring commission. Bradley v. Milliken, 772 F.2d 266 (6th Cir.1985), vacating 585 F.Supp. 348 (E.D.Mich.1984). We held that the district court had failed to provide the parties with adequate notice and a hearing regarding the propriety of terminating jurisdiction over the community relations program and the uniform code of student conduct; and, although the parties had been notified that changes in the monitoring commission's role were at issue, we determined that the district court's decision regarding the monitoring commission also could not be upheld since we had struck down one of the court's major premises for terminating jurisdiction over the commission. Id. at 272. Accordingly, we vacated the district court's order and remanded the case for further proceedings, returning the case to the status quo ante. We also granted the district court the limited discretion to enter an order which would provide for a smooth transition back to these revitalized programs.
 
 
 3
 The present controversy regarding the district court's denial of a motion to intervene stems from a relatively complex chain of events which we will only highlight here. On March 16, 1985, then-counsel of record for the plaintiff class, Thomas I. Atkins, filed with the district court a notification of his withdrawal as General Counsel for the NAACP and its Special Contribution Fund (SCF), and informed the court that Grover G. Hankins was his permanent successor as General Counsel who would be making an appearance on behalf of the NAACP and SCF in the near future. The notice continued: "It is my intent, with the approval of the Court, to remain in the case as a counsel for the certified class."
 
 
 4
 In the months following this court's 1985 remand order, Atkins continued to make appearances before the district court, and controversy continued to focus on the uniform code of student conduct, community relations program and monitoring commission. On November 12, 1985, two of the three judges withdrew from the panel assigned to the case, and the lawsuit proceeded before District Judge Cohn only. Although a hearing on this court's remand order was initially scheduled for December 1985, it was rescheduled for January 1986, following a status conference on November 19, 1985. Plaintiffs and intervening defendant Detroit Federation of Teachers then sought a writ of mandamus in this court asserting, inter alia, that the district court was not complying with the remand instructions because the case had not been returned to the status quo ante. This court denied the mandamus petition on April 9, 1986, reasoning that the arguments could be asserted on direct appeal.
 
 
 5
 On January 13, 1986, the day the hearing was scheduled to commence, the district court for the first time addressed the issue raised by attorney Hankins and fellow attorney Horace Stone as to which attorneys represented which plaintiffs. Hankins and Stone urged the court to rule that Atkins' notice of withdrawal of appearance, their appearance, and the history of the case established that they were lead counsel for the plaintiff class and that Atkins did not represent any party. The concern over who was lead counsel principally arose from a difference in opinion as to whether or how to enter into negotiation settlements with the Detroit School Board. Hankins was in favor of entering into settlement negotiations with the School Board and was not opposed to placing the Superintendent of Public Instruction in charge of the monitoring function, a plan which the district court expressly approved of. Hankins, in short, believed that an adversary relationship with the School Board was no longer beneficial, whereas Atkins believed Hankins' approach was not in the best interest of the plaintiff class. Atkins believed that anything short of an independent monitoring commission was inadequate to guarantee compliance with the remedial order, and that parents must continue to play an active role in the remedial stage.
 
 
 6
 The district court did not resolve this issue immediately, requesting the parties to provide it with more information regarding the NAACP's role in the litigation. In the meantime, settlement negotiations involving all attorneys continued.
 
 
 7
 Shortly thereafter at a status conference on January 21, 1986, Atkins, in the name of the plaintiff class, filed a motion to supplement class representatives. This motion was opposed by all other counsel of record, including Hankins and Stone.
 
 
 8
 A hearing to determine which counsel represented the plaintiff class was then held on January 28, 1986 Atkins asserted that the Detroit Branch of the NAACP had been withdrawn as party-plaintiff in 1974, and that he had accordingly represented the plaintiff in his individual capacity, not in his capacity as General Counsel of the NAACP and SCF. He argued that he should therefore be permitted to continue as lead counsel for plaintiffs given his expertise and familiarity with the issues.
 
 
 9
 On January 30, 1986, the district court entered an order addressing a number of issues pending before it, including who would proceed as counsel for the plaintiff class. The court approved the substitution of Hankins and Stone as General Counsel for the NAACP and SCF in Atkins' place, and then concluded that "the lead or principal attorney for the plaintiffs has at all times been the General Counsel of the Association and Fund, as distinguished from the particular attorney occupying that position." Accordingly, the court ruled that Hankins became the attorney for the plaintiff class as soon as he succeeded Atkins. The court also rejected the option of dividing the responsibilities between Hankins and Atkins given the nature of their disagreements over how the litigation should proceed. However, the court expressly invited Atkins to participate in the remaining proceedings as amicus curiae.
 
 
 10
 The court denied the motion to supplement class representatives on February 3, 1986. Specifically, the court noted that the case was "in the twilight of its remedial phase" and that participation by the proposed supplementary representatives would not assist the court in any significant way. The court also denied a motion to reconsider this ruling.
 
 
 11
 On March 4, 1986, a motion to intervene pursuant to Rules 24(a) and (b), Fed.R.Civ.P., was filed by Atkins on behalf of appellants herein, and a revised motion to intervene was filed on March 13, 1986. The motion asserted that the present class representatives did not adequately represent their interests, particularly with respect to the proper role of the monitoring commission and other remedial efforts. A hearing was held on this motion on April 7, 1986, with three individuals testifying in support of the motion.
 
 
 12
 First, Valerie McNeece, co-chair of the Ludington School Community Organization for the Middle Magnet School, testified that the Ludington School was improperly deviating from racial and gender quotas in its enrollment procedures. She testified that her efforts to elicit aid from the NAACP, and Hankins in particular, had failed.
 
 
 13
 Second, Helen Moore, one of the co-founders of Black Parents for Quality Education and its current spokesperson, testified that she believed Hankins was siding with the defendants and did not represent BPQE's interests, although she admitted that she agreed with NAACP's ultimate goal of a unitary school system. She further stated that BPQE was a loosely knit "movement," with no constitution, by-laws, officers, dues or identifiable members. Although Moore did not have any children presently enrolled in the public schools, she claimed that BPQE and she were deeply involved in the Detroit school system's affairs.
 
 
 14
 Finally, Ray Litt testified. Although a named plaintiff and class representative in this lawsuit, Litt was included in the motion to intervene. Litt testified that the NAACP no longer represented his interests because it had abandoned its initial position on the school community relations component of the case and had failed to support the continued existence of an independent monitoring commission. Further, he was concerned about the deterioration of the Cass High School program which he testified began in 1981 with the start of the vocational high school component of the remedial order. He had never contacted Hankins or the court about his concerns.
 
 
 15
 The district court denied the motion to intervene on May 2, 1986. The court noted that the motion to intervene had been stimulated by this court's prior order reversing the district court's termination of jurisdiction over various aspects of the remedial decree, stating that its errors had been rectified on remand. The court concluded that the problems with the Ludington Middle School, as outlined by McNeece, were "discrete and involve[d] a possible violation of the remedial decree ... [and constituted] an insufficient basis for allowing intervention." The court noted that future problems with the Ludington School should be directed to the monitor, who was fully aware of the situation at the school. The court further stated that Litt's concerns about the adverse impact of the vocational high schools on Cass had never been raised to the court, and could not form the basis for intervention given the number of years the problem had existed. The court concluded:
 
 
 16
 The real controversy implicated by the petition to intervene is not the inadequacy of representation by the Detroit Chapter of the NAACP as class representative but rather Mr. Atkins's disagreement as to how the litigation should be conducted. Given the present status of the case where the only outstanding issue, except for the continuing obligations of the Detroit Board under the remedial decree, is the appropriateness of long term suspension as a form of punishment under the Code of Student Conduct, petitioners have offered no good reason to add additional lawyers to the roster of lawyers in the case. As previously observed, "[T]here can be but one ... master of a litigation." Manning v. Mercantile Trust Co., 26 Misc. 440, 57 N.Y.S. 467, 468 (1899).
 
 
 17
 This timely appeal followed.
 
 II.
 
 18
 The proposed intervenors state that this appeal "constitutes the continued effort to require the District Court to obey the 1985 mandate of this Court." They challenge the wisdom of various actions below concerning the uniform code of student conduct, the community relations program and the monitoring commission, as well as the propriety of the district court's decision to remove class counsel. We must note as an initial matter that we cannot review the merits of the district court's rulings with respect to any of these issues given the present posture of the case. Rather, this case is before us solely on an appeal from the denial of a motion to intervene.
 
 A.
 
 19
 The proposed intervenors first argue that they had a right to intervene in this lawsuit pursuant to Fed.R.Civ.P. 24(a), which provides in pertinent part:
 
 
 20
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 21
 A motion to intervene as a matter of right must therefore be timely, United Airlines, Inc. v. McDonald, 432 U.S. 385, 387, 97 S.Ct. 2464, 2466, 53 L.Ed.2d 423 (1977); NAACP v. New York, 413 U.S. 345, 365, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648 (1973), and the proposed intervenor must establish (1) that he has an interest which is the subject matter of the lawsuit, (2) which is likely to be impaired by the disposition of the lawsuit, and (3) that the existing parties cannot adequately protect that interest. See Triax Co. v. TRW, Inc., 724 F.2d 1224, 1227 (6th Cir.1984); Brewer v. Republic Steel Corp., 513 F.2d 1222, 1223 (6th Cir.1975).
 
 
 22
 The threshold determination of whether a motion is timely is a matter within the sound discretion of the trial court. NAACP v. New York, 413 U.S. at 365-66, 93 S.Ct. at 2602-03; Michigan Ass'n for Retarded Citizens v. Smith, 657 F.2d 102, 105 (6th Cir.1981). Timeliness should be evaluated in the context of all relevant circumstances, such as the purpose of the motion to intervene, the length of time the applicant for intervention should have known of his interest in the case, whether the original parties would be prejudiced by further delays, whether there are any unusual circumstances which would bear on granting or denying the motion and to what stage the lawsuit has progressed. Michigan Ass'n for Retarded Citizens, 657 F.2d at 106; Stotts v. Memphis Fire Dep't, 679 F.2d 579, 582 (6th Cir.), cert. denied, 459 U.S. 969, 103 S.Ct. 297, 74 L.Ed.2d 280 (1982); see also United Airlines, Inc. v. McDonald, 432 U.S. at 396, 97 S.Ct. at 2470 (court must determine whether the intervenor acted promptly in view of all the circumstances).
 
 
 23
 Appellees vigorously assert that appellants' motion to intervene was untimely. They assert that the motion was filed for the sole purpose of permitting attorney Atkins to participate as lead counsel in the lawsuit, that appellants knew of the ongoing litigation and recent negotiations long before the motion was filed, and that the original parties would suffer prejudice by further delays, particularly in light of the fact that this case has been in its remedial stage for many years. Appellants counter that they filed this motion as soon as it became evident that the remaining parties would not represent their interests.
 
 
 24
 We do not reach the merits of this argument. The district court did not rely on untimeliness to deny the proposed intervenors' motion, and we believe it would be improper to make findings on all the relevant criteria without the benefit of the district court's insights. Therefore, for the remainder of our analysis, we will assume that the threshold requirement of timeliness has been met.
 
 
 25
 Although the Supreme Court has yet to define what constitutes a sufficient interest to satisfy the interest requirement of Rule 24(a)(2), it has generally been accepted that students, parents of children in the school system and parent organizations have a sufficient interest in eliminating segregation in the schools to satisfy this requirement, and that their interest could be impaired by the disposition of a school desegregation case. See Morgan v. McDonough, 726 F.2d 11, 13 (1st Cir.1984); United States v. Board of School Comm'rs of Indianapolis, Ind., 466 F.2d 573, 575 (7th Cir.1972), cert. denied, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); Liddell v. Caldwell, 546 F.2d 768, 770 (8th Cir.1976), cert. denied, 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977). Further, this court has acknowledged that "interest" is to be construed liberally. Hatton v. County Bd. of Educ. of Maury County, Tenn., 422 F.2d 457, 461 (6th Cir.1970).
 
 
 26
 However, in the instant case, the district court found that the problem at the Ludington Middle School, as testified to by witness McNeece, was discrete and "[i]n association with the other parties to the petition, this is an insufficient basis for allowing intervention." It could be concluded that a discrete interest such as this fails to establish the necessary "direct, substantial interest" in the overall desegregation suit required by Rule 24(a)(2). See Brewer v. Republic Steel Corp., 513 F.2d at 1223. Similarly, BPQE may not be entitled to the presumption of having a sufficient interest generally granted to parent organizations. Being a loosely knit "movement" rather than an organization, with no identifiable members or structure, and having a principal spokesperson who presently does not have children in the Detroit public school system, it too may not have a "direct, substantial interest" in this lawsuit. Finally, it is clear that Ray Litt cannot intervene in the same lawsuit in which he is already a named party.
 
 
 27
 However, even assuming that the proposed intervenors have stated a sufficient interest in this litigation which is likely to be impaired--i.e., an interest in preserving particular remedial components--they must also establish that the present class representatives will not adequately protect that interest. See Meyer Goldberg, Inc. v. Goldberg, 717 F.2d 290, 293 (6th Cir.1983) ("the applicant for intervention bears the burden of demonstrating inadequate representation"). This requires "overcom[ing] the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit ... have the same ultimate objective." Wade v. Goldschmidt, 673 F.2d 182, 186 n. 7 (7th Cir.1982) (per curiam). An applicant for intervention fails to meet his burden of demonstrating inadequate representation "when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its fulfillment of his duty." Id.; see also Liddell v. Caldwell, 546 F.2d at 770; Morgan v. McDonough, 726 F.2d at 14. A mere disagreement over litigation strategy or individual aspects of a remediation plan does not, in and of itself, establish inadequacy of representation. Cf. United States v. Hooker Chemicals & Plastics Corp., 749 F.2d 968, 987 (2d Cir.1984) ("The mere existence of disagreement over some aspects of the remediation necessary to abate the hazard does not demonstrate a lack of capacity on the part of the government as parens patriae to represent its constituents fairly and faithfully."); United States v. Perry County Bd. of Educ., 567 F.2d 277, 280 (5th Cir.1978) ("Appellants are not entitled to intervention of right simply because they would have voted differently had they been members of these representative bodies.").
 
 
 28
 The proposed intervenors essentially raised three complaints about the adequacy of representation on the part of the class representatives: problems at the Ludington School, deterioration of Cass High School, and the modification of the monitoring and community relations components of the remedial decree. We conclude that the testimony does not support a finding of inadequate representation concerning any of these complaints.
 
 
 29
 First, as became evident at the evidentiary hearing on this motion, the district court and the monitor were fully aware of the enrollment difficulties at the Ludington School. Although the class representatives had not attended to this issue with the expediency desired by LSCO, the concerns had been raised, and the court has taken action to look into the problems. Accordingly, no showing of inadequate representation has been made. Cf. Bradley v. Milliken, 620 F.2d 1141, 1142 (intervenor's arguments had already been raised by the Detroit School Board and the court had ordered that the issues be taken into account). In light of the circumstances, we believe the interests articulated by the LSCO representative can be protected without intervention. See Hatton, 422 F.2d at 461 (must establish that interest can only be protected through intervening in the proceedings).
 
 
 30
 Second, Ray Litt's testimony regarding the problems at Cass High School cannot form the basis of a motion to intervene of right. The difficulties allegedly began in 1981, several years before the motion to intervene was filed, and were never brought to the attention of the district court or counsel for the class. Litt admitted that he had never contacted Hankins about this problem. Inadequacy of representation cannot be shown on the basis of this record.
 
 
 31
 Finally, the proposed intervenors argue that by NAACP's agreeing to a plan to place the principal monitoring role with the Superintendent of Public Instruction rather than an independent commission, the class representative had abandoned an essential part of the remedial decree and therefore had failed in its duty to represent their interests. They liken this to situations where the parties' interests, though once in accord with each other, have parted significantly and irreconcilably. See, e.g., Triax Co. v. TRW, Inc., 724 F.2d at 1228; cf. Jones v. Caddo Parish School Bd., 499 F.2d 914, 917 (5th Cir.1974) (per curiam) (evidentiary hearing required to determine which group more properly represents the interests of the black community). They assert that by having an interest which is diverse from that of the plaintiff class, they have a right to intervene.
 
 
 32
 We disagree. It appears evident to us that the present class representatives and proposed intervenors share the same ultimate objective in a unitary school district. Although the litigation strategy has altered, this objective has not been abandoned by current counsel. We cannot say at this point in the litigation and upon this record that the agreed-to modifications in the monitoring component, or other changes in the remedial plan, so harm members of the plaintiff class and the proposed intervenors that the class representatives have failed to fulfill their duty. Further, while the proposed intervenors strongly oppose abandoning an adversarial role vis-a-vis the Detroit School Board, such a decision is not the equivalent of "collusion" with the opposing party. On the basis of the record before us, we simply cannot find that such differences of opinion lead to a conclusion that representation has been inadequate to protect the interests of the proposed intervenors.
 
 
 33
 Accordingly, the district court did not err in finding that appellants failed to establish a right to intervene under Rule 24(a)(2).
 
 B.
 
 34
 Alternatively, appellants assert that the district court abused its discretion in denying their motion for permissive intervention pursuant to Rule 24(b). Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, NAACP v. New York, 413 U.S. at 365, 93 S.Ct. at 2602. Michigan Ass'n for Retarded Citizens, 657 F.2d at 105, and if the "applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2). Rule 24(b)(2) also provides that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." We therefore review a denial of a Rule 24(b) motion only for an abuse of discretion. See Meyer Goldberg, Inc., 717 F.2d at 294. For the reasons already set forth above, we will assume the motion was timely filed.
 
 
 35
 We can detect no basis upon which to find an abuse of discretion. This suit is several years older than when we upheld a prior denial of a motion to intervene citing the advanced age of the case and the possible adverse effect of further delays on the parties. See Bradley, 620 F.2d at 1142. Further, when it appears that the proposed intervenors may attempt to have the court reconsider its prior rulings, as in the instant case, concern over delay and prejudice to the parties is particularly apparent. See Hatton, 422 F.2d at 461.
 
 
 36
 Moreover, the district court has already taken steps to protect the proposed intervenors' interests by inviting attorney Atkins to appear as amicus curiae in the case. This would allow the district court the benefit of hearing proposed intervenors' concerns and views, as well as the benefit of Atkins' expertise, before it rules on issues in the advanced remedial phase of this desegregation action. See Bradley, 620 F.2d at 1142 (can protect interests by petitioning court to participate as amicus curiae); Penick v. Columbus Educ. Ass'n, 574 F.2d 889, 890 (6th Cir.1978) (per curiam) (district court allowed participation as amicus in remedial stage of school desegregation proceedings); cf. Stotts v. Memphis Fire Dep't, 679 F.2d at 584 (court afforded proposed intervenors the opportunity to air objections).[1]
 
 
 37
 Finding that appellants failed to establish a right to intervene under Rule 24(a) and that the district court did not abuse its discretion in denying appellants' motion for permissive intervention, we AFFIRM the district court's order.
 
 
 38
 MERRITT, Circuit Judge, dissenting.
 
 
 39
 I agree with the Court's disposition of the permissive intervention issue under Rule 24(b) but disagree with its decision concerning mandatory intervention under Sec. 24(a). The Court rests its decision on "adequacy of representation," and I disagree with its decision that the new NAACP general counsel is adequately representing the group of black parents represented by Thomas Atkins, Esq. These parents insist that the provisions of the consent decree establishing the monitoring commission, the community relations program and the student conduct code should not be changed. The new NAACP counsel has agreed with the school board and the State to make significant changes in these programs, including transferring the monitoring function from an independent local agency to the state and reducing the role of parents in the community relations program. The NAACP and the defendants may very well be right on the merits, but their positions are directly contrary to the position of the black parents who believe the terms of the consent decree should be fully carried out. I believe the District Court and this Court will be assisted by having both sides of the issue fully ventilated, and this cannot be done if one side is excluded from the courtroom.
 
 
 40
 I recognize that Mr. Atkins and his clients are "divisive" and sometimes difficult to deal with and that the NAACP, the defendants and the Court may well be tired of this case and Mr. Atkins' tactics. I am persuaded, however, by Mr. Atkins' argument that the monitoring function should not be turned over to the state without an adversary hearing where parties on both sides are heard. I think the arguments in favor of the consent decree and the status quo need to be heard and considered. I think Mr. Atkins' clients are entitled to be heard, and I would not agree to the settlement modifying the consent decree without letting them have their day in court.
 
 
 
 [1]
 Intervenors suggest that the district court did not allow permissive intervention because the court was frustrated with Atkins' persistence on important issues over which there was considerable disagreement. While a strong showing of improper motive on the part of the district court would possibly require reversal, there has been no such showing here. See Morgan v. McDonough, 726 F.2d at 15