NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0667n.06
Filed: September 5, 2006

No. 05-4354

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BEVERLY BLOUNT-HILL, MARCIA D. )
CONNORS, and WILLIE A. TERRELL, JR., )
President, Dayton Education Association, )
                                 )
         Plaintiffs-Appellees, )         ON APPEAL FROM THE
                                   )         UNITED STATES DISTRICT
         v. )         COURT FOR THE SOUTHERN
                                   )         DISTRICT OF OHIO
BOARD OF EDUCATION OF THE STATE OF )
OHIO, DEPARTMENT OF EDUCATION OF )
THE STATE OF OHIO, and SUSAN TAVE )
ZELMAN, )
                                   )
         Defendants, )
                                   )
WHITE HAT MANAGEMENT, LLC, )
                                   )
         Defendant-Appellant. )
                                   )
_____ )

BEFORE: MOORE, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Appellant White Hat Management, LLC ("White Hat") appeals the district court's denial of its petition to intervene in the underlying action as a matter of right pursuant to Federal Rule of Civil Procedure 24(a) and as a matter of discretion pursuant to Federal Rule of Civil Procedure 24(b). Specifically, White Hat contends that, as a community school management company, it has a

substantial right to intervene in litigation alleging that the funding provisions of the Community Schools Act, O.R.C. § 3314 (the "Act"), violate both the state and federal constitutions.

Although we base our holding on different grounds than the district court, we nevertheless affirm.

I.

The facts of this case are undisputed. In June 2004, the original plaintiffs, education association members or parents of school-aged children in Ohio, filed a complaint purporting to represent Ohio taxpayers against the Ohio Department of Education, the Ohio Board of Education, and the Ohio Superintendent of Public Instruction, Susan Tave Zelman, ("defendants") alleging that the Act violates both the Ohio and the federal constitutions. In short, plaintiffs seek declaratory and injunctive relief, contending that Ohio's funding statute for community schools–alternatives to traditional public schools–violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States.[1] Defendants filed their answer in July 2004. White Hat petitioned the court to intervene as a defendant in October 2004.

White Hat is a professional education management firm with headquarters in Akron, Ohio. White Hat does not operate a community school, but its enterprise involves contracting with community schools to provide services in aid of the community schools' operation. The complaint at issue does not directly challenge any of the contracts to which White Hat is a party. Instead, the

---

[1]Plaintiffs also allege that the Act violated guarantees of Ohio's constitution. These claims are pending in state court and need not be addressed here.

complaint challenges the constitutionality of the Act that funds the community schools. These community schools, in turn, contract with service providers such as White Hat.

Thus, White Hat's primary motivation for seeking intervention is concededly economic: because "[s]tate funds are the sole source of funding for community schools . . . [i]f [s]tate funds are taken away from community schools, they will be forced to close." Nevertheless, White Hat contends that it also has an interest in fulfilling its "mission"–to provide an alternative education option for Ohio students.

The district court denied White Hat's petition to intervene on September 26, 2005, both as a matter of right and of discretion. White Hat timely appealed.

II.

Except as to issues of timeliness, which are not present in this case, we review de novo a district court's denial of a motion to intervene pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000) (citations omitted).

Federal Rule of Procedure 24(a) provides that a non-party may intervene in litigation as of right "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." FED. R. CIV. P. 24(a)(2). We have construed Rule 24(a) to require a party attempting to intervene to establish: "'(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the

applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court.'" *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005) (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)).

The district court properly cited the four-part test governing a potential party's right to intervene in pending litigation. In its application of the test, the district court ruled that: (1) the motion to intervene was timely; (2) White Hat satisfied the liberal inquiry that it had a substantial interest in the matter; (3) White Hat satisfied the minimal burden demonstrating that an impairment of its substantial legal interest was possible if intervention was denied; and (4) nevertheless, White Hat failed to demonstrate that the existing defendants would not adequately represent its interests. Accordingly, the district court denied White Hat's petition. On appeal, White Hat contends that the district court correctly held that White Hat satisfied the timeliness, substantial interest, and impairment requirements, but argues that it erroneously held that White Hat did not satisfy the minimal burden concerning the inadequacy of the present representation. We disagree. Specifically, we conclude that, pursuant to *United States v. Tennessee*, 260 F.3d 587 (6th Cir. 2001), White Hat lacks a substantial legal interest in the litigation for purposes of Rule 24(a).

As the district court noted, the Sixth Circuit subscribes to "a rather expansive notion of the interest sufficient to invoke intervention of right." *Providence Baptist Church*, 425 F.3d at 315 (citations omitted); *see also Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991); *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("[T]his court has acknowledged that 'interest' is to

be construed liberally.") Notably, "an intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing." *Providence Baptist Church*, 425 F.3d at 315 (citing *Assoc. Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994)).

We undoubtedly construe Rule 24 "interests" expansively and have stated that "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Miller*, 103 F.3d at 1247. Although White Hat urges us to conclude that such a close case exists here, we are unpersuaded. Instead, we view this case as comparable to *United States v. Tennessee*. In *Tennessee*, a non-profit contract service provider ("CMRA") for developmentally disabled persons sought to intervene in a constitutional and statutory action challenging the state's treatment of developmentally disabled persons for purposes of participating in settlement agreements. *Tennessee*, 260 F.3d 587. First, CMRA asserted an "economic interest in assuring adequate funding for implementation of the settlement agreements and its contractual rights in agreements with the State to provide community-based services." *Id.* at 596. Second, the service provider alleged an interest in a specific provision of the contested law. *Id.* In assessing whether these interests were sufficient, we reasoned:

> The parties to these lawsuits have entered into consent decrees aimed at guaranteeing that Tennessee provide at least the minimum level of care to developmentally disabled individuals required by federal law. CMRA does not challenge the terms of these agreements or contend that they fall below what federal law requires. *CMRA is only concerned with the level of funding provided by the State to community-based service providers.* CMRA's claimed interest does not concern the constitutional and statutory violations alleged in the litigation, but rather how much its members get paid for providing services. *CMRA has an interest in the economic component of the settlement but the consent decrees obligate the State, not CMRA, to fund community services adequately.* By the terms of the settlement agreements, it is the

> responsibility of the State of Tennessee to provide adequate and appropriate community services to members of the plaintiff class. Implementation of the settlement agreement does not alter CMRA's economic interests with the State to provide support and services to the class members nor its ability to negotiate the terms of these contracts. Further, as found by both district court judges, CMRA can protect its economic interests in contract negotiations with the State by lobbying the legislative and executive branches for favorable funding arrangements, and in state courts by suing to enforce its contractual rights.

*Id.* at 595-96 (emphasis added). Accordingly, we held that "CMRA's economic interest and its interest in the lock-in provision do not reach the level of requisite substantial interest required to intervene." *Id.* at 596.

White Hat attempts to distinguish *Tennessee*, alleging that its holding was based largely on the fact that CMRA waited too long to enter the litigation and that CMRA's motivation was to protect its participation in "future remedial proceedings." Further, White Hat alleges that it is motivated by both economic interests *and* for reasons relating to the preservation of this educational alternative. Nevertheless, we conclude that the Tennessee holding with respect to whether a "substantial legal interest" exists is controlling. Like CMRA, White Hat's primary interest is economic. It is not a party to any challenged contract nor is it directly targeted by plaintiffs' complaint. Instead, White Hat seeks to preserve the constitutionality of the community school's funding structure so that it might continue to contract with community schools. Similar to CMRA, White Hat's "claimed interest does not concern the constitutional and statutory violations alleged in the litigation," but rather "an interest in the economic component." *Tennessee*, 260 F.3d at 596. We conclude that this interest is insufficient to comprise a substantial legal interest for purposes of Rule 24(a) intervention. Like the proposed intervener in *Tennessee*, White Hat "can protect its

economic interests in contract negotiations with the State by lobbying the legislative and executive branches for favorable funding arrangements . . . ." *Id.* at 596-97.

Accordingly, we hold that White Hat does not have a substantial legal interest for purposes of Rule 24(a) intervention, and, therefore, we affirm the district court's denial of White Hat's petition to intervene on this basis. *See Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 243 (6th Cir. 2004) ("[W]e may affirm a decision of the district court if correct for any reason, including one not considered below.") (internal quotation and citation omitted).

III.

Alternatively, White Hat appeals the district court's denial of its petition for permissive intervention. Federal Rule of Civil Procedure 24 likewise sets forth the standard for permissive intervention:

> Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

FED. R. CIV. P. 24(b).

"So long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice to the original parties, and any other relevant factors is reviewed for an abuse of discretion." *Miller*, 103 F.3d at 1248 (citing *Purnell*, 925 F.2d at 950-51.)

In denying White Hat's petition for permissive intervention, the district court relied upon "undue and unnecessary delay" as justification for the denial. Specifically, the district court concluded that "[w]hile White Hat's perspective is different from that of the Defendants, it has offered nothing to indicate that its contribution will add anything of unique value. . . . Allowing it to intervene would result only in the duplication of the efforts of the existing Defendants and undue delay of the litigation."

Although White Hat contends that there is insufficient evidence to support this conclusion, this likelihood of duplication is more obvious when viewed in light of White Hat's proposed answer to plaintiffs' complaint. There, White Hat attempts to argue that plaintiffs have not raised every necessary and indispensable party, which, according to plaintiffs, indicates that White Hat is requesting the joinder of "every community school, proposed community school, and management company . . . a finding [that] would raise the number of defendants to well over two hundred." In short, the district court had evidence before it, and was persuaded, that White Hat's presence in the litigation "would result only in the duplication of the efforts of the existing Defendants and undue delay of the litigation." We conclude that the district court's resolution of this issue was not an abuse of its discretion. Accordingly, we affirm.

## IV.

For the foregoing reasons, we affirm the order of the district court.

No. 05-4354
*Beverly Blount-Hill, et al. v. Board of Education of the State of Ohio*

**CLAY, Circuit Judge, concurring in the judgment.** Although I agree with the majority's decision to affirm the order of the district court, I would do so because White Hat has not offered any reason to support its contention that the State of Ohio may fail to adequately represent its interests in the instant litigation and not because White Hat's economic interest is insufficient to support intervention as of right. Whether White Hat's economic interest is sufficient to support intervention as of right is not controlled by this Court's decision in *United States v. Tennessee,* 260 F.3d 587 (6th Cir. 2001), and constitutes a complex question of first impression in this Circuit. Consequently, I believe the issue would be more properly treated in a thorough, published opinion, after extensive briefing. Inasmuch as this case can be easily resolved on the ground that White Hat has failed to show that the State of Ohio may not adequately represent its interest in the instant litigation, there is no need to address the sufficiency of White Hat's economic interest.

## I.

This Circuit has not definitively resolved whether an economic interest can ever suffice to support intervention as of right. On the one hand, we have repeatedly stated that an applicant need not have a "legally enforceable right" to a specific outcome in the litigation in order to have a "substantial legal interest" in the subject matter of the litigation. *Grutter*, 188 F.3d at 399 (citing *Miller*, 103 F.3d at 1245 and *Purnell*, 925 F.2d at 948); *see also Tennessee*, 260 F.3d at 595. Thus, presumably a sufficiently substantial economic interest could support intervention as of right. On the other hand, in *United States v. Tennessee*, 260 F.3d 587 (6th Cir. 2001), we rejected a non-

- 9 -

profit's economic interest in contracting with the State of Tennessee as sufficient to support intervention as of right.

In rejecting the particular applicant's economic interest in *Tennessee*, 260 F.3d 587 (6th Cir. 2001), however, we did not purport to definitively resolve whether any economic interest could support intervention as of right. Instead, we held that an economic interest *unrelated to the alleged statutory and constitutional violations* could not support intervention as of right. *Id.* at 595. In *Tennessee,* the United States filed suit to enforce the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997-1997jj, and the Fourteenth Amendment of the United States Constitution. *United States v. Tennessee*, 925 F. Supp. 1292, 1296 (W.D. Tenn. 1995). After a trial at which it was established that Tennessee had violated federal law, the district court imposed a remedial plan on Tennessee. *Id.* at 1297. CMRA, an association of non-profit agencies that provide services to the mentally disabled, applied to intervene, alleging that because its members contracted with the Tennessee to provide services to the mentally disabled, it had a financial interest in the resolution of Tennessee's violations. *Tennessee*, 260 F.3d at 595. It appears that CMRA was essentially alleging that Tennessee's implementation of the remedial plan would drain its financial resources, potentially causing Tennessee to pay CMRA less for its services. This Court rejected CMRA's argument, explaining that CMRA's interest in funding "did not concern the constitutional and statutory violations alleged in the litigation, but rather how much its members get paid for providing services." *Id.*

Because *Tennessee* did not definitively resolve whether an economic interest could ever suffice to support intervention as of right, it does not control the outcome of this case. In contrast to the interest of the applicant in *Tennessee*, White Hat's economic interest directly concerns the constitutional violations alleged by Plaintiffs. Plaintiffs allege that the funding provisions of institutions with which White Hat contracts are unconstitutional. If Plaintiffs prevail, Ohio, and hence the community schools, will be legally prohibited from expending state resources to fulfill the community schools' contract obligations with White Hat unless and until Ohio devises a constitutional funding scheme. This differs significantly from *Tennessee*, where the lawsuit might have left Tennessee with less money to pay CMRA, but certainly not in danger of prohibiting Tennessee from fulfilling its legal obligations to CMRA.

Even if *Tennessee* could be interpreted to hold that an economic interest never suffices to support intervention as of right, however, it would not control the outcome of the instant case. Importantly, the portion of the *Tennessee* opinion addressing the sufficiency of the intervenor's interest is dicta. Before reaching the sufficiency of CMRA's interest, the *Tennessee* court had already held that CMRA was not entitled to intervention on timeliness grounds. Thus, the court's discussion of whether CMRA's economic interest was sufficient to support intervention was unnecessary to the disposition of the case. *Id.* at 595; *see also Black's Law Dictionary* 454 (6th ed. 1990) (defining dicta as "Opinions of a judge which do not embody the resolution or determination of the specific case before the Court").

Not only is there no controlling case law in this Circuit, there is no clear consensus outside this Circuit on whether an economic interest suffices to support intervention as a matter of right. *See* Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1908, 263 (2d. ed. 1986) ("There is not as yet any clear definition, either from the Supreme Court or from the lower courts, of the nature of the 'interest relating to the property or transaction which is the subject of action. . . . '") At least two Circuits have held that an economic interest may be sufficient to support intervention as of right. *New York Pub. Interest Research Group, Inc. v. Regents of the University of the State of New York*, 516 F.2d 350, 352 (2d Cir. 1975) (per curiam); *United States v. Alisal Water Corp.*, 370 F.3d 915, 919-20 (9th Cir. 2004) (holding that an economic interest supports intervention as of right where it is concrete and related to the subject matter of the litigation). There is, however, authority to the contrary. *See Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 221 (3d Cir. 2005). Consequently, I do not believe that we should attempt to resolve this issue in a perfunctory manner in an unpublished opinion.

## II.

### Inadequate Representation

Nonetheless, I would also affirm the order of the district court. I would do so, however, for the reason given by the district court: White Hat has failed to establish that the State of Ohio may not adequately represent its interests. This Court entertains a presumption that the defendant will adequately represent an applicant's interests and the applicant bears the burden of overcoming this presumption. *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). To overcome the

presumption of adequacy, "the [applicant is] not required to show that the representation will in fact be inadequate" but only "that the existing defendant . . . *may* not adequately represent [his or her] interests." . . *Grutter*, 188 F.3d at 400 (internal citations omitted) (emphasis added). This Court has found that an applicant presents a sufficient probability of inadequate representation where: (1) the defendant has an incentive to disregard possible defenses that the applicant would like to present, *id*. at 400; or (2) there is some evidence that the defendant will choose not to appeal an adverse ruling, *Miller*, 103 F.3d at 1248. In contrast, this Court has stated that an applicant fails to show a sufficient potential for inadequate representation where there is no evidence that (1) the defendant colluded with an opposing party, (2) the defendant and the applicant may have divergent interests in the litigation, or (3) the defendant actually failed to fulfill his duty to represent. *Bradley*, 828 F.2d at 1192.

In this case, White Hat has failed to meet its burden to show that the State of Ohio may fail to adequately represent White Hat's interests. White Hat has not pointed to any failure by Ohio to represent White Hat's interests in the instant suit nor articulated any possible future scenario in which its interests diverge from the State of Ohio. White Hat presents two theories under which it claims that its interests may diverge from the State of Ohio, both equally unpersuasive. First, White Hat argues that its interests may diverge from Ohio's interests because Ohio represents all community schools whereas White Hat only represents schools with which it contracts. Second, White Hat argues that its interests may diverge from Ohio's because Ohio's role is that of a regulator of the OCSA and White Hat's role is of one regulated by the OCSA.

While these arguments could carry force in a different context, they are unpersuasive as applied to the facts of this case. White Hat's first argument is unpersuasive because the interests of the individual community schools do not, and will not, differ in this litigation. The OCSA's funding scheme is either unconstitutional as applied to all of the schools or none of the schools. Thus, the school's interests and potential defenses are necessarily identical in the instant litigation. Consequently, there is no reason to believe White Hat's interests may diverge from Ohio's simply because its interests relate only to specific schools.

White Hat's second argument – that its interests may diverge from Ohio's interests because is a regulated entity while Ohio is a regulator – is equally unpersuasive. White Hat seems to argue both that (1) its status as a regulated entity means that it may have a different interest in the remedying the funding situation should the OCSA be declared unconstitutional and that (2) the mere fact that it is a regulated entity and Ohio is a regulator is grounds for assuming inadequate representation. First, White Hat may very well have different interests in remedying the funding situation should the OCSA be declared unconstitutional. However, this possible future divergence of interests does not bear on White Hat's or Defendant's interests in the instant case. A new funding scheme may only be enacted by the Ohio legislature. *De Rolph v. State*, 677 N.E.2d 733, 747 n.9 (Ohio 1997) (declaring unconstitutional, but refusing to remedy, school funding legislation because such legislation is the province of the legislature). Neither the district court nor any party to this litigation has the power to devise a new funding scheme on its own. *Cf. Stupak -Thrall v. Glickman*, 226 F.3d 467, 482 (6th Cir. 2000) (Moore, Circuit Judge, dissenting) (arguing that applicant's,

Wilderness Association, interests would not be adequately represented in settlement negotiations by the federal government, who had the authority to devise remedy in settlement). Accordingly, White Hat's participation in this suit is unnecessary to protect its interest in a new funding scheme if the OCSA's current scheme is declared unconstitutional. To protect this interest, White Hat should lobby the Ohio legislature.

Next, the mere fact that White Hat is a regulated entity and Ohio is a regulator is not grounds for assuming that White Hat's interests will diverge from Ohio's, and thus, that Ohio may not adequately represent White Hat. To accept this argument would render both the presumption of adequate representation established *Bradley*, 828 F.2d at 1992, and the language of Rule 24 permitting intervention as of right only when the defendant is unable to adequately represnt the applicant's interests meaningless. Courts in this Circuit would be required to grant intervention whenever a private party with a sufficient interest attempted to intervene in litigation against a state. Moreover, the cases in this Circuit have generally required something more than mere differing relationship to the subject matter of the litigation. For example, in *Grutter* this Court held that minority students may not be adequately represented by the University of Michigan in a suit challenging the University's affirmative action admissions policy because the students articulated a *concrete* situation in which their interests diverged from the University. 188 F.3d at 400-01. Specifically, the students contended that Michigan might hesitate to present evidence of its own past discrimination in order to justify its affirmative action program. *Id.* at 401. Because no entity is eager to present evidence of its own misdeeds, the students' theory was believable. *See id.*

Similarly, in *Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990), the applicants presented evidence that the defendant would not rely on a specific affirmative defense that the applicants believed was warranted. In *Jansen*, several white firefighters and persons seeking firefighter positions sued the City of Cincinnati, challenging a consent decree from a previous lawsuit, which required Cincinnati to establish an affirmative action hiring / promotion system for Cincinnati's fire department. *Id.* at 338. The plaintiffs from the previous lawsuit, African-American firefighters, attempted to intervene to protect their interests in the remedies established by the consent decree. *Id.* at 338-39. The applicants offered arguments in support of Cincinnati's interpretation of the consent decree that the City had failed to raise in its answer to the complaint. *Id.* at 343. Specifically, the applicants cited paragraph 25 of the consent decree, which was not cited by the City, as a basis for the City's behavior. *Id.* Thus, this Court determined that the applicants had demonstrated a sufficient probability of inadequate representation.

Yet again, in *Miller*, this Court held that an applicant, the Michigan Chamber of Commerce ("MCC"), had demonstrated a sufficient possibility that the State of Michigan might not adequately represent its interests. 103 F.3d at 1247-48. The MCC applied to intervene in a suit by labor unions, challenging to Michigan's campaign finance law. *Id.* at 1243. This Court held that MCC had met its burden both because its role differed from Michigan's role (regulator v. regulated) and because there was evidence that Michigan had already failed to represent the MCC's interests. *Id.* at 1247-48. Specifically, Michigan had already failed to appeal a preliminary injunction, which while potentially in the interest of Michigan, was not in the interest of the MCC. *Id.* at 1248. In light of

Michigan's failure to appeal the preliminary injunction, the Court determined that the MCC's status as a regulatee created interests in the litigation that the State of Michigan, as a regulator, would not adequately represent. *Id.*

In contrast, in the *United States v. Michigan*, 424 F.3d 438, 444 (6th Cir. 2005), this Court found that an applicant had not met its burden of showing a potential for inadequate representation. It explained:

> The relief requested by the proposed intervenors and the State of Michigan in their respective pleadings is nearly identical in that they both seek a declaration that the Tribes do not retain any off-reservation usufructuary rights under the Treaty. The proposed intervenors *have not identified any separate arguments unique to them* that they would like to make concerning the existence of the Tribes' inland rights, *nor have they shown that the State of Michigan would fail to present such arguments* to the district court.

*Id* (emphasis added). The panel's reasoning indicates that an applicant has the burden to, at a minimum, articulate a potential scenario in which its interests may diverge from the defendant's interests. Inasmuch as White Hat has failed to articulate any scenario in which its interests may diverge from Ohio's interests, I would hold that White Hat failed to establish inadequate representation.

### III.

### Conclusion

For the reasons set forth above, I would affirm the order of the district court denying White Hat's application to intervene.